**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

NORMA B. OWENS,

    *Plaintiff-Appellee,*

v.

AUTOMOTIVE MACHINISTS PENSION TRUST,

    *Defendant-Appellant.*

No. 07-35253

D.C. No.
CV-06-00943-TSZ

OPINION

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted
August 6, 2008—Seattle, Washington

Filed January 12, 2009

Before: Harry Pregerson, William C. Canby, Jr. and
John T. Noonan, Circuit Judges.

Opinion by Judge Pregerson
Dissent by Judge Noonan

## COUNSEL

Bruce McKenzie, McKenzie, Rothwell, Barlow, & Korpi, P.S., Seattle, Washington, for defendant/appellant Automotive Machinists Pension Trust.

Les M. Coughran, McKenzie, Rothwell, Barlow, & Korpi, P.S., Seattle, Washington, for defendant/appellant Automotive Machinists Pension Trust.

Harry M. Reichenberg, Law Office of Harry M. Reichenberg, Federal Way, Washington, for plaintiff/appellee Norma Owens.

**OPINION**

PREGERSON, Circuit Judge:

## I.  Introduction

For more than thirty years, Norma Owens ("Norma") and Phillip R. Owens, Sr. ("Phillip") maintained a "quasi-marital" relationship in the state of Washington. In 2004, Norma and Phillip separated. On August 19, 2005, the Superior Court of King County, Washington, issued a state court order ("Order") awarding Norma a fifty-percent interest in the pension benefits being paid to Phillip by Automotive Machinist Pension Trust ("Automotive Trust" or "Trust").

Automotive Trust declined to implement the Order on the ground that it was not a valid Qualified Domestic Relations Order ("QDRO") under § 1056 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1056(d)(1). Specifically, the Trust argued (1) that the Order did not relate to "marital property rights" pursuant to 29 U.S.C. § 1056(d)(3)(B)(ii)(I); and (2) that Norma was not an "Alternate Payee" under 29 U.S.C. § 1056(d)(3)(K) because she did not qualify as an "other dependent."[1]

We agree with the Washington Federal District Court that, because Norma and Phillip lived together in a quasi-marital relationship for more than thirty years, the Superior Court's Order does in fact relate to "marital property rights," that Norma is an "Alternate Payee" under 29 U.S.C. § 1056(d)(3)(B)(i)(I), and that the Superior Court's Order therefore qualifies as a valid Qualified Domestic Relations Order. We therefore AFFIRM the Federal District Court's denial of Automotive Trust's Motion for Reconsideration.

---

[1]Section 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1), generally prohibits the assignment of pension benefits. But Section 206(d)(3)(B)(i) carves out an exception to the anti-assignment rule for benefits awarded pursuant to a QDRO.

A. *Background*

The important facts are not in dispute. For more than thirty years, Norma Owens and Phillip Owens lived together as husband and wife in a quasi-marital relationship[2] in King County, Washington. Although Norma and Phillip were never legally married, they had and raised two boys together, purchased a home together, and held themselves out to their friends and to the public as a married couple. During their thirty-year relationship, Norma and Phillip also acquired numerous joint assets including real property, furniture, furnishings, and vehicles. The Owens' jointly acquired funds were held in various financial institutions, and some of these funds were held in joint bank accounts. Additionally, during their relationship, Phillip, because of his employment, acquired interest in various retirement accounts.

Norma's formal education ended after the ninth grade. Financially, Norma contributed little or nothing to the household. Instead, Phillip provided the main financial support for the family. Except for brief periods during which she worked for minimum wages, Norma, a homemaker, devoted her time to caring for her husband and raising their two sons. Phillip and Norma filed joint tax returns. The tax returns for 2003, 2002, and 2001 list Norma as Phillip's "wife." Norma was also named as Phillip's wife and beneficiary in Phillip's life

---

[2]We substitute the term "quasi-marital" for the more commonly used term "meretricious." Although "meretricious" is a term of specific legal meaning, some courts, acknowledging that the word's historical connotation is demeaning, sexist and offensive, choose to substitute the term "quasi-marital." *See Peffley-Warner v. Bowen*, 778 P.2d 1022, 1023 n.5 (Wash. 1989) (recognizing the offensive character of the word "meretricious"); *Zion Const., Inc. v. Gilmore*, 895 P.2d 864, 865 n.1 (Wash. 1995) (substituting "quasi-marital" for the term "meretricious" because the dictionary definition of the latter is "relating to a prostitute" or "having a harlot's traits"); *see also In re Eggers*, 638 P.2d 1267, 1270 n.2 (Wash. 1982). Accordingly, we adopt the district court's use of the term "quasi-marital."

insurance application. Though they were not legally married, Norma and Phillip lived together for more than thirty years in a quasi-marital relationship as husband and wife.

In March 2004, Norma and Phillip separated. Only two major assets of theirs remained: the house in Seattle that they had purchased together and Phillip's ERISA pension plan with Automotive Trust. Proceeds from the sale of the house were used to pay off the Owens' delinquent mortgage payments and other debts. The only significant remaining asset was Phillip's ERISA pension plan with Automotive Trust. That ERISA pension plan is the subject of this litigation.

In January 2005, Phillip submitted his claim for early retirement benefits to Automotive Trust. Phillip's claim became effective on February 1, 2005 and resulted in Phillip's retirement benefit being paid to him as a single life annuity.[3] Phillip currently receives gross monthly pension benefit payments from Automotive Trust in the amount of $1905.79; the payments will continue for his lifetime.

On August 10, 2004, shortly after the Owens' separated, Norma filed a "Petition for Equitable Distribution of Property Acquired During a Meretricious Relationship" in the Superior Court for King County, Washington. In the Petition, Norma claimed that she was entitled to fifty percent of each of Phillip's monthly pension benefit payments. On May 11, 2005, the parties participated in an arbitration hearing. Automotive Trust was not a party to that action. On June 7, 2005, an arbitration award was issued in favor of Norma.

Pursuant to the arbitration award, on August 19, 2005, the Superior Court issued an Order assigning Norma "Fifty Per-

---

[3]In his application for retirement benefits, which Phillip submitted in 2005 after he and Norma had separated, he check the box labeled "Never Married" and listed his two sons as beneficiaries. This conflicts with the parties joint tax returns, on which Norma is listed as Phillip's "wife."

cent (50.0%) of each of [Phillip's] monthly benefit payments from [Automotive Trust's] Plan" based on Norma's "quasi-marital relationship" to Phillip. The Superior Court considered the pension benefits that Phillip accrued under the Trust as part of the overall equitable distribution of property acquired during the couple's thirty-year quasi-marital relationship. Because the Order related to "marital property rights," and because it named Norma as an "Alternate Payee," the Superior Court titled the Order a "Qualified Domestic Relations Order."

On October 14, 2005, Automotive Trust notified Norma's attorney that the Superior Court's Order did not, in fact, qualify as a Qualified Domestic Relations Order under § 206(d)(3) of ERISA. Despite the Superior Court's findings, Automotive Trust refused to pay Norma her share of the pension benefits. In a letter to Norma's attorney, Harry Reichenberg, Automotive Trust stated:

> It is [Automotive Trust's] understanding that [Norma] and [Phillip] were never married. Therefore, it would not appear that the [Superior Court's] August 19, 2005 order relates to the provision of child support, alimony payments, or marital property rights, and it would not be qualified [as required by ERISA § 206(d)(3) and Internal Revenue Code ("I.R.C.") § 152(d)(2)(H)].

In a response letter dated February 6, 2006, Norma's attorney asked Automotive Trust to re-evaluate its position on the ground that the Superior Court's Order was a valid QDRO. Specifically, Norma asserted that: (1) the Order related to "marital property rights" because Norma and Phillip lived together for more than thirty years in a quasi-marital relationship; (2) Washington state law permitted such an equitable distribution of property following the termination of a quasi-marital relationship; and (3) Norma satisfied the "Alternate Payee" requirement because she qualified as an "other depen-

dent" under I.R.C. § 152(d)(2)(H). On March 6, 2006, Automotive Trust replied to Norma's attorney and reaffirmed its original position that the Order did not constitute a valid QDRO because it did not meet the relevant ERISA requirements. Norma filed a declaratory judgment action in the United States District Court for the Western District of Washington ("U.S. District Court").

On October 27, 2006, Automotive Trust filed a Motion for Summary Judgment. On November 10, 2006, Norma filed a Cross Motion for Summary Judgment. On January 19, 2007, the U.S. District Court, Honorable Thomas A. Zilly, presiding, denied the Trust's motion and granted Norma's cross-motion for summary judgment. The U.S. District Court held that the Superior Court's Order (1) was a valid domestic relations order because it related to "marital property rights;" and (2) was a valid QDRO because it recognized the existence of an "Alternate Payee." On January 30, 2007, Automotive Trust filed a Motion for Reconsideration and Amendment of Judgment, which the U.S. District Court denied on March 1, 2007. On March 27, 2007, Automotive Trust timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

The question before us is this: Did the U.S. District Court correctly hold that the state Superior Court's Order qualified as a QDRO pursuant to 29 U.S.C. § 1056(d)(1)? That is, (1) did the Order relate to "marital property rights" pursuant to 29 U.S.C. § 1056(d)(3)(B)(ii)(I); and (2) did Norma qualify as an "Alternate Payee" pursuant to 29 U.S.C. § 1056(d)(3)(K)?

## II.   Discussion

### A.   *The Parties' Contentions*

Automotive Trust contends that a non-marital relationship does not, under any circumstance, create "marital property rights," that Norma does not qualify as an "other dependent," and that Norma is therefore not an "Alternate Payee" under

ERISA. According to the Trust, therefore, the Superior Court's Order is not a valid QDRO and Norma is not entitled to receive a portion of Phillip's ERISA pension benefits. Norma, on the other hand, maintains that the Order did relate to "marital property rights," and that she qualifies as an "other dependent" under I.R.C. § 152(d)(2)(H) and, therefore, as an "Alternate Payee" under 29 U.S.C. § 1056(d)(3)(B)(i)(I). According to Norma, the Superior Court's Order is a valid QDRO.

B.  *Standard of Review*

We review *de novo* the district court's review of a plan administrator's conclusions regarding legal obligations under a QDRO. *Hamilton v. Washington State Plumbing & Pipefitting Indus. Pension Plan*, 433 F.3d 1091, 1102 (9th Cir. 2006). Whether a domestic relations order meets the statutory requirements for a valid QDRO, and therefore is enforceable against a pension plan, is a question determined in the first instance by the pension plan administrator and, if necessary, by a court of competent jurisdiction. *See Tr. of Dir. of Guild of America-Producer Pension Benefits Plan v. Tise*, 234 F.3d 415, 421 (9th Cir. 2000); *see also* 29 U.S.C. § 1056(d)(3)(H)(i).

C.  *Analysis*

**[1]** Section 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1), generally prohibits the assignment of pension benefits. But § 206(d)(3), 29 U.S.C. § 1056(d)(3), contains an important exception to the general rule: pension benefits may be assigned pursuant to a "domestic relations order" that qualifies as a "Qualified Domestic Relations Order" under 29 U.S.C. § 1056(d)(3)(B)(i).

**[2]** ERISA enumerates the requirements for a valid QDRO. A Qualified Domestic Relations Order is a "domestic relations order" which "creates or recognizes the existence of an

alternate payee's right to [receive] benefits payable with respect to a participant under a plan . . . ." 29 U.S.C. § 1056(d)(3)(B)(i)(I); I.R.C. § 414(p)(1)(A). The term "domestic relations order" refers to any judgment or order which "relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant" and is issued "pursuant to a [s]tate domestic relations law [ . . . ]." 29 U.S.C. § 1056(d)(3)(B)(ii)(I); I.R.C. § 414(p)(1)(B). A "dependent" is defined as an individual "other than . . . the spouse . . . who, for the taxable year of the taxpayer, has the same principal place of abode as the taxpayer and is a member of the taxpayer's household." I.R.C. § 152(d)(2)(H), *amended by* Pub. L. No. 110-351, 122 Stat. 3949 (2008).

Therefore, for the King County Superior Court's Order to be a valid QDRO, the Order must "recognize[ ] the right of an alternate payee to receive all or a portion of the benefits payable with respect to a participant under the plan," *Hamilton*, 433 F.3d at 1096 (quoting 29 U.S.C. § 1056(d)(3)(B)(i)(I)) (internal quotation marks omitted)), and it must relate to "marital property rights."

**[3]** ERISA requires pension plans like Automotive Trust to pay benefits "in accordance with the applicable requirements of any [QDRO]." 29 U.S.C. § 1056(d)(3)(A). The statute also entrusts pension plans with the authority to determine, pursuant to "reasonable procedures," the validity of a QDRO. *Id.* § 1056(d)(3)(G)(ii).[4]

**[4]** Automotive Trust is a collectively bargained multi-employer pension plan ("Plan") that is governed by Title 1 of

---

[4]Section 1056(d)(3)(G)(i)(II) states, "within a reasonable period after receipt of [a domestic relations order], the plan administrator shall determine whether such order is a qualified domestic relations order and notify the participant and each alternate payee of such determination." 29 U.S.C. § 1056(d)(3)(G)(i)(II).

ERISA, 29 U.S.C. § 1001. Article VIII, Section 807 of the Plan provides that the Trust will pay benefits in accordance with any Qualified Domestic Relations Order, and that such benefits are not otherwise assignable. Importantly, Section 807(B)(1) of the Plan limits the plan administrator's discretion. Where necessary, the Trust's determination of whether a QDRO is valid is reviewable by a federal court to determine, *inter alia*, "whether, in the particular instance . . . the Trustees were in error upon an issue of law."

U.S. District Judge Thomas Zilly concluded that the Order issued by the Superior Court of King County awarding Norma a fifty-percent interest in Phillip's pension benefits constituted a valid QDRO because (1) the Order relates to "marital property rights" under 29 U.S.C. § 1056(d)(3)(B)(ii)(I); and (2) Norma qualifies as a "dependent" of Phillip, and therefore as an "Alternate Payee," under 29 U.S.C. § 1056(d)(3)(B)(i)(I). For the reasons stated below, we agree.

###    a.    *"Marital Property Rights"*

Automotive Trust contends that the Superior Court's Order does not constitute a valid QDRO because it does not relate to "marital property rights" within the meaning of ERISA § 1056(d)(3)(B)(ii)(I). The Trust bases its argument on the fact that Norma and Phillip were never legally married, despite the facts that the couple lived together in a quasi-marital relationship for more than thirty years; that they had and raised two children together; that they owned and maintained joint property together; and that they held themselves out to the public as a married couple.

**[5]** Norma disagrees. She states that the Order does relate to "marital property rights" because she and Phillip lived together in a quasi-marital relationship for more than thirty years. To support her argument, Norma relies on Washington state domestic relations law, under which unmarried couples in quasi-marital relationships are deemed to jointly own all

property acquired during the relationship. *Connell v. Francisco*, 898 P.2d 831 (Wash. 1995). According to Norma, the Superior Court's Order was a valid QDRO under which she was properly awarded a fifty-percent interest in Phillip's pension benefits.

In family law cases, state courts are authorized to "create enforceable interests in the proceeds of an ERISA plan, so long as those interests [comply] with the QDRO provision[s]." *Tise*, 234 F.3d at 420. The first requirement for a valid QDRO is that it relate to "marital property rights" as contemplated by ERISA. 29 U.S.C. § 1056(d)(3)(B)(ii)(I). In *Hamilton v. Washington State Plumbing*, we enumerated the method for interpreting ERISA's statutory provisions:

> [When] interpreting [ERISA], our task is to construe what Congress has enacted. We begin, as always, with the language of the statute. When looking to the plain language of a statute, we do more than view words or subsections in isolation. We derive meaning from context, and this requires reading the relevant statutory provisions as a whole.

*Hamilton*, 433 F.3d at 1098 (internal citations and quotations omitted).

Looking to the "language of the statute," ERISA does not explicitly define the term "marital property rights." Therefore, as *Hamilton* instructs, we must look to the statute as a whole and "derive meaning from context." *Id.*

But Automotive Trust urges us to rely on another federal law: the Defense of Marriage Act, 1 U.S.C. § 7 ("DOMA"). According to the Trust, DOMA precludes any quasi-marital relationship from resulting in "marital property rights" because, the Trust argues, DOMA defines "the word 'marriage' [as] only a legal union between one man and one woman as husband and wife. . . ." *Id.* On that basis, the Trust

contends that a federal definition for "marital property rights" —albeit outside the statutory framework of ERISA>—does exist: one that precludes any quasi-marital relationship from resulting in "marital property rights."

**[6]** We reject the Trust's argument for two reasons. First, DOMA is not applicable here. DOMA's legislative history reflects only Congress's concern for same-sex marriages; it sheds no light on quasi-marital relationships such as the relationship between Phillip and Norma that is at issue here. Second, as the district court underscored, Washington explicitly recognizes "quasi-marital" relationships for purposes of determining property rights after an extended putative marriage. We agree with the U.S. District Court that the Defense of Marriage Act:

> is not dispositive with regard to [Norma's] entitlement to benefits under the [Automotive Trust] Plan. The definitions provided by [DOMA] do not address whether a domestic relations order following a quasi-marital relationship is a [QDRO] under ERISA, or whether "quasi-marital" property rights under [Washington] state law fall within "marital property rights" as the term is used in ERISA.

Having determined that ERISA does not explicitly define "marital property rights," and that no federal definition exists for the term, *Hamilton* directs us to "derive meaning from context" and "read[ ] the relevant statutory provisions as a whole" when interpreting ERISA. 433 F.3d at 1098. Reading ERISA as a whole, Section 1056(d)(3)(B)(ii)(II) requires that a Qualified Domestic Relations Order be "made pursuant to a [s]tate domestic relations law (including a community property law)."[5] 29 U.S.C. § 1056(d)(3)(B)(ii)(II). On that basis,

---

[5]In its entirety, this section of ERISA defines a "domestic relations order" as any judgment or order which "relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant" and is issued "pursuant to a [s]tate domestic relations law . . . ." 29 U.S.C. § 1056(d)(3)(B)(ii)(I); I.R.C. § 414(p)(1)(B).

we turn to Washington state domestic relations law to determine the meaning of the term "marital property rights."[6]

**[7]** The state of Washington recognizes quasi-marital relationships for purposes of property division. "Wholly unrelated to either kind of marriage, [Washington] courts have recognized the existence of [quasi-marital] relationships, which this court has determined to be stable, cohabiting relationships." *In re Marriage of Pennington*, 14 P.3d 764, 769 (Wash. 2000). Norma and Phillip enjoyed just such a "stable, marital-like relationship[,] where both parties cohabit[ed] with the knowledge that a lawful marriage between them [did] not exist." *Connell*, 898 P.2d at 834. In *Connell*, the court concluded that Washington state "limit[s] the distribution of property following a [quasi-marital] relationship to property that would have been characterized as community property had the parties been married." *Id.* at 836.

Norma and Phillip lived together in a quasi-marital relationship for more than thirty years. During that time, they jointly accumulated various forms of community property. In addition to purchasing a home together, the Owens obtained numerous joint assets including real property, furniture, furnishings, and vehicles. The couple's community property also included jointly acquired funds, some of which were held in joint bank accounts, as well as the interest that Phillip acquired in various retirement accounts, including the Automotive Trust pension plan at issue here.

---

[6]The Supreme Court also instructs federal courts to look to state law when determining the validity of a domestic relations order. In *Boggs v. Boggs*, 520 U.S. 833 (1997), the Supreme Court held:

> Support obligations, in particular, are "deeply rooted moral responsibilities" that Congress is unlikely to have intended to intrude upon. In accord with these principles, Congress ensured that state domestic relations orders, as long as they meet certain statutory requirements, are not pre-empted.

*Id.* at 848 (internal quotation marks and citations omitted).

**[8]** As the U.S. District Court stated, *Connell* is "instructive on the question of property division pursuant to State community property laws, and . . . [on] the limits of a quasi-marital relationship under Washington law." *Connell* held:

> Until the Legislature, as a matter of public policy, concludes [quasi-marital] relationships are the legal equivalent to marriages, we limit the distribution of property following a [quasi-marital] relationship to *property that would have been characterized as community property had the parties been married.* This will allow the trial court to justly divide property the couple has earned during the relationship through their efforts without creating a common law marriage or making a decision for a couple which they have declined to make for themselves.

*Connell*, 898 P.2d at 835-36 (emphasis added).

Furthermore, *Connell* recognized that Washington state does not permit common law marriages. But Norma does not argue on common law grounds. Instead, she seeks an equitable distribution of community property pursuant to a valid quasi-marital relationship. Importantly, *Connell* concluded that the limits that Washington state has placed on quasi-marital relationships do not extend to the division of property: "property that would have been characterized as community property had the couple been married is before the trial court for a just and equitable distribution." *Id.* at 837.

**[9]** Reading the "relevant statutory provisions [of ERISA] as a whole," which requires that a QDRO be "made pursuant to a [s]tate domestic relations law (including a community property law)," 29 U.S.C. § 1056(d)(3)(B)(ii)(II), compels us to apply Washington state domestic relations law here. Applying *Connell*, it is clear that the Superior Court's Order did relate to "marital property rights" because Phillip's pension benefits comprise "property that would have been character-

ized as community property had the parties been married." *Connell*, 898 P.2d at 836. Assigning Norma a fifty-percent interest in Phillip's pension benefits was consistent with Washington law regarding the "distribution of property following a [quasi-marital] relationship." *Id.* Relying on Washington state domestic relations law, we hold that the Superior Court's Order did relate to "marital property rights."

b.  *"Alternate Payee"*

The Superior Court's Order fulfilled the first requirement for a valid Qualified Domestic Relations Order—that the order relate to "marital property rights." The second requirement is whether Norma qualifies as an "Alternate Payee" under 29 U.S.C. § 1056(d)(3)(K). ERISA defines the term "Alternate Payee" as follows:

> The term "[A]lternate [P]ayee" means any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant.

29 U.S.C. § 1056(d)(3)(K).

Automotive Trust contends that Norma does not qualify as an "Alternate Payee" because she was not a "spouse, former spouse, child, or other dependent" of Phillip. Norma, on the other hand, posits that she is an "Alternate Payee" because she qualified as Phillip's "dependent." In support of her argument, Norma cites to (1) her designation as Phillip's "wife" on the couple's joint tax returns; (2) her designation as "wife and beneficiary" on Phillip's life insurance application; and (3) her undisputed financial dependence on Phillip during their thirty-year long quasi-marital relationship. The U.S. District Court held that, because Norma's "dependent status is undisputed for the [thirty]-year term of her quasi-marital rela-

tionship with Phillip," and that "no facts in the record indicate otherwise," Norma was an "Alternate Payee" under the statute. We agree.

**[10]** To determine whether Norma qualifies as Phillip's "dependent," we look to the Internal Revenue Code, I.R.C. § 152(d)(2)(H). Section 152(d)(2)(H) defines the term "dependent" as "[a]n individual (other than . . . the spouse . . . of the taxpayer) who, for the taxable year of the taxpayer, has the same principal place of abode as the taxpayer and is a member of the taxpayer's household."[7] I.R.C. § 152(d)(2)(H).

**[11]** It is undisputed that, for more than thirty years, Norma and Phillip shared "the same principal place of abode" in Seattle, Washington. In fact, the Owens purchased the home together, lived there together, and even jointly used the proceeds from the sale of the home to pay off the mortgage and other debts. Phillip was the primary wage-earner while Norma devoted her time to caring for her husband's and children's needs and tending to the couple's home. As the couple's joint tax returns indicate, Norma was a member of Phillip's household; she is listed on the couple's tax returns as Phillip's "wife." Because Norma qualifies as an "other dependent" under I.R.C. § 152(d)(2)(H), we find that she was properly designated as an "Alternate Payee" under 29 U.S.C. § 1056(d)(3)(K), thereby fulfilling the second requirement for a valid QDRO.

## III. Conclusion

For more than thirty years, Norma lived together with Phillip in a quasi-marital relationship. Norma was a homemaker who devoted her time to caring for her husband and raising their two boys. Phillip served as the household's primary

---

[7]The term "household" is defined as a "group of people who dwell under the same roof" and as a "family living together." *Black's Law Dictionary* 744 (7th ed. 1999).

wage earner. On that basis, the Superior Court issued a domestic relations order entitling Norma to a fifty-percent interest in Phillip's pension benefits, to be paid by Automotive Trust. We conclude that the Order satisfied both requirements for a valid QDRO: (1) it related to "marital property rights" under 29 U.S.C. § 1056(d)(3)(B)(ii)(I); and (2) Norma qualified as an "Alternate Payee" under 29 U.S.C. § 1056(d)(3)(K) because she was a "dependent" under I.R.C. § 152(d)(2)(H).

**[12]** We therefore AFFIRM the U.S. District Court's ruling on January 19, 2007, that granted the cross-motion for summary judgment in favor of Norma Owens.

---

NOONAN, Circuit Judge, dissenting:

Where the equities lie in this case is not in dispute. What is controlling, however, is a federal statute specifying that "benefits provided under the pension plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). Commenting in dicta on this provision and speaking for a unanimous Supreme Court, Justice Blackmun stated:

> As a general matter, courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text. The creation of such exceptions, in our view, would be especially problematic in the context of an antigarnishment provision. Such a provision acts, by definition, to hinder the collection of a lawful debt. A restriction on garnishment therefore can be defended *only* on the view that the effectuation of certain broad social policies sometimes takes precedence over the desire to do equity between particular parties. It makes little sense to adopt such a policy and then to refuse enforcement whenever enforce-

ment appears inequitable. A court attempting to carve out an exception that would not swallow the rule would be forced to determine whether application of the rule in particular circumstances would be "especially" inequitable. The impracticability of defining such a standard reinforces our conclusion that the identification of any exception should be left to Congress.

*Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 363, 376 (1990). The statutory command accompanied by this gloss frustrates Norma's claim.

True, exceptions exist, specified by statute. We are told, however, that they are to be read narrowly and are not subject to judicial expansion. *Id*. As of 1984, Congress provided the QDRO exception. It is Norma's only possible path to part of Phillip's pension.

A QDRO must relate "to the provision of child support, alimony payments or marital property rights to a spouse, former spouse, child or other dependent of a participant." Norma, however, is neither the spouse nor former spouse of Phillip. Neither is she his child. She is not currently his dependent. When Congress wanted to refer to a previous relationship, it specified "former." Norma is a former dependent not referenced by the statute.

The arbitration award she has won and the state domestic relations order she has secured do create property interests in Norma that may well be secured by action taken directly against Phillip. The award and the state order have not created a right to direct payment by the trustee of the plan.