*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RAYMOND BOULDS, | ) | |
| | ) | Supreme Court No. S-14887 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-09-01717 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ELENA NIELSEN, | ) | |
| | ) | No. 6901 - April 25, 2014 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Vanessa White, Judge.

Appearances: Kenneth J. Goldman, Law Office of Kenneth J. Goldman, P.C., Palmer, for Appellant. Marguerite Humm, Alaska Legal Services Corporation, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

WINFREE, Justice.

I. INTRODUCTION

Raymond Boulds and Elena Nielsen were unmarried cohabitants for 16 years and raised children together. When their relationship ended, they litigated child custody and property ownership. The superior court determined which tangible personal property was domestic partnership property and divided that property equally between

the parties. The superior court also considered three employment benefits that Boulds accumulated during his relationship with Nielsen: an insurance death benefit, a 401(k) retirement account, and a union pension. The court determined that the insurance death benefit and the 401(k) retirement account were not domestic partnership assets and belonged to Boulds alone. But the court determined that the union pension was a domestic partnership asset and was subject to division. Because Boulds appealed to this court, the superior court has not yet issued an order dividing the union pension.

Boulds argues that federal law prohibits dividing his union pension with a non-spouse, and that the superior court misapplied Alaska law by examining only Boulds's own initial intent to share the union pension with Nielsen for the benefit of their children. We conclude that federal law does not bar Nielsen from receiving a share of the union pension and that the superior court did not err in determining Nielsen was entitled to half of the union pension under Alaska law. We therefore affirm the superior court's decision and remand for the final division of the union pension.

## II.    FACTS AND PROCEEDINGS

Raymond Boulds and Elena Nielsen began cohabiting in 1993 and separated in 2009; they never married. Boulds and Nielsen have three children together. Boulds also raised Nielsen's son from a prior relationship as his own child. During their relationship, Boulds worked on the North Slope and Nielsen was a stay-at-home mother. Although Nielsen worked as a waitress when the parties met, she began receiving disability income in 1996. This money was spent on the household and children. Boulds claimed Nielsen as a dependent on his taxes for at least some of the years they were together.

During the relationship Boulds accumulated three employment benefits through his employer: an insurance death benefit, a 401(k) retirement account, and a union pension governed by the federal Employee Retirement Income Security Act

(ERISA).[1] When Boulds was first hired by his employer, he listed Nielsen as his intended pre-retirement death beneficiary for the union pension, even though the form specified that only a spouse, child, parent, or sibling could be listed. Boulds's employer told him approximately one year later that he could not list a cohabitant. He then listed his children as the beneficiaries.

After the relationship ended the parties engaged in a series of child custody and property division proceedings. Trial was held on several days from December 2010 to June 2012. The superior court entered findings of fact and conclusions of law on August 30, 2012, incorporating its July 28, 2011 oral property division. The court determined that the employment death benefit and 401(k) account were Boulds's separate property and that the union pension was partnership property. The court divided the domestic partnership assets equally, but has not yet issued an order dividing the union pension.

## III. DISCUSSION

Boulds argues that the superior court erred in determining that Nielsen was entitled to part of his union pension for two reasons: (1) ERISA prohibits division of a federal retirement account with a non-spouse;[2] and (2) the court erred by determining

---

[1]    29 U.S.C. §§ 1001-1461 (2006). ERISA governs payment of federal pension plans to individuals other than the pension holder (termed "alternate payees"), *id.* § 1056(d)(3)(A), and defines a "qualified domestic relations order" as "creat[ing] or recogniz[ing] the existence of an alternate payee's right to . . . receive all or a portion of the benefits payable with respect to a participant under a plan," *id.* § 1056(d)(3)(B)(i). An "alternate payee" is defined as "any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive . . . the benefits." *Id.* § 1056(d)(3)(K).

[2]    ERISA's effect on division of a retirement account is a question of law we review de novo. *Madonna v. Tamarack Air, Ltd.*, 298 P.3d 875, 878 (Alaska 2013) (continued...)

that the parties intended the union pension to be a partnership asset.[3]  We conclude neither argument has merit.

## A.    ERISA

ERISA prohibits assignments of pensions except pursuant to a qualified domestic relations order (QDRO).[4]  ERISA defines a QDRO as a domestic relations order that "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan,"[5] and that fulfills several other requirements which are not disputed in this appeal.[6]  A domestic relations order "[r]elates to the provision of . . . marital property rights to a spouse, former spouse, child, or other dependent of a

---

[2]    (...continued)
(citing *Curran v. Progressive Nw. Ins. Co.*, 29 P.3d 829, 831 (Alaska 2001)) (statutory interpretation reviewed de novo).  "[W]e adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Wood v. Collins*, 812 P.2d 951, 955 n.5 (Alaska 1991) (quoting *Langdon v. Champion*, 745 P.2d 1371, 1372 n. 2 (Alaska 1987) (internal quotation marks omitted)).

[3]    "When two people reside together in an intimate relationship, the property they acquire while cohabiting should be distributed according to the parties' express or implied intent." *Jaymot v. Skillings-Donat*, 216 P.3d 534, 544 (Alaska 2009) (citing *Bishop v. Clark*, 54 P.3d 804, 811 (Alaska 2002)).  We determine the parties' intent by applying law to facts, a de novo review. *Id.* (citing *Bishop*, 54 P.3d at 810-11, 811 n.11). In the absence of an express agreement, we " 'closely examine the facts in evidence to determine what the parties implicitly agreed upon.' " *Id.* (quoting *Bishop*, 54 P.3d at 811).

[4]    29 U.S.C. § 1056(d)(1), (3).

[5]    *Id.* § 1056(d)(3)(B)(i)(I).

[6]    *See id.* § 1056(d)(3)(B)(i)(II), (d)(3)(C)-(D).

participant."[7] "Alternate payee" as used in the definition of a QDRO is identical to the categories of recipients listed in the domestic relations order definition.[8]

Boulds argues that the superior court lacked authority to award any of the union pension to Nielsen because "it is illegal under ERISA," which Boulds argues preempts state law.[9] We assume Boulds is contending that cohabitants cannot hold "marital property" and that Nielsen does not qualify under the enumerated domestic relations order recipient categories. Boulds is incorrect. The superior court did not err when it divided the union pension between cohabitants under Alaska law, and this outcome is not inconsistent with ERISA.[10]

The Court of Appeals for the Ninth Circuit examined a similar situation in *Owens v. Auto Machinists Pension Trust*, which concerned an unmarried couple who had

---

[7]     *Id.* § 1056(d)(3)(B)(ii)(I).

[8]     *See id.* § 1056(d)(3)(K) (alternate payee is "any spouse, former spouse, child, or other dependent of a participant"). Given this, Boulds apparently only disputes whether the QDRO will satisfy the prerequisite definition of a domestic relations order.

[9]     Boulds also argues that the division is not permitted under Alaska law because authority for courts to divide pensions comes from AS 25.24.160(a)(4) and is strictly limited to dividing pensions between formerly married couples. We made clear in *Bishop* that AS 25.24.160(a)(4) applies only to married couples, and does not apply to cohabiting couples. 54 P.3d at 812. But in *Reed v. Parrish* we upheld a trial court's determination that many assets, including a retirement account, were domestic partnership assets. 286 P.3d 1054,1057-58 (Alaska 2012). There is no reason under Alaska law to hold that the union pension is not subject to distribution under domestic partnership law.

[10]     We are not quick to find preemption. In *Clauson v. Clauson* we cautioned against using federal law too freely, noting that the U.S. Supreme Court "has refused to override state law unless preemption is 'positively required by direct [federal] enactment' or the particular law does 'major damage' to 'clear and substantial' federal interests." 831 P.2d 1257, 1262-63 (Alaska 1992) (alteration in original) (quoting *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581 (1979)).

cohabited for 30 years.[11]  A Washington state court determined that the woman should receive half of the man's monthly payments from an ERISA-covered pension acquired during the relationship.[12]  When the woman sought her portion, the pension fund administrator notified her that because the couple had not been married, the trial court's order was not enforceable under ERISA.[13]  The woman filed and prevailed on a declatory judgment action in federal district court, and the plan administrator appealed to the Ninth Circuit.[14]

The Ninth Circuit started its analysis by noting that ERISA only recognizes orders that relate to "marital property rights" and concern an "alternate payee," which is defined to include an "other dependent."[15]  The case therefore turned on the meaning of "marital property rights" and whether the woman was an "other dependent."  The court reasoned that because federal law does not define "marital property rights," the court must apply Washington law to define the term.[16]  The court concluded that "Washington recognizes quasi-marital relationships for purposes of property division."[17]

---

[11]   551 F.3d 1138, 1139-40 (9th Cir. 2009).

[12]   *Id.* at 1141.

[13]   *Id.*

[14]   *Id.* at 1141-42.

[15]   *Id.* at 1144-46; *see* 29 U.S.C. § 1056(d)(3)(B)(i)(I) (QDRO "recognizes the existence of an alternate payee's right"); *id.* § 1056((d)(3)(B)(ii)(I) (domestic relations order relates to "marital property rights"); *id.* § 1056(d)(3)(K) (alternate payee includes "other dependent").

[16]   *Owens*, 551 F.3d at 1144-46.

[17]   *Id.* at 1145 (citing *In re Marriage of Pennington*, 14 P.3d 764, 769 (Wash. 2000)); *see also Connell v. Francisco*, 898 P.2d 831, 834-37 (Wash. 1995) (en banc).

It explained that Washington acknowledges that these quasi-marital relationships occur when the relationship is stable, cohabitative, and both parties know they are not lawfully married.[18] Washington limits property division between cohabitants to what would have been possible " 'had the parties been married.' "[19] The Ninth Circuit concluded that because Washington allows property to be distributed after a cohabitative relationship ends, the state provides "marital property rights" to cohabitants.[20] Under Washington law, the pension was a "marital property right."[21]

Next, the court looked to the Internal Revenue Service's definition of an "other dependent" to determine whether the woman was an "other dependent" under ERISA.[22] The Internal Revenue Code defines "other dependant" to include "[a]n individual (other than . . . the spouse . . . of the taxpayer) who, for the taxable year of the taxpayer, has the same principal place of abode as the taxpayer and is a member of the taxpayer's household."[23] The Ninth Circuit held that the woman was an "other dependent" as defined by the IRS, and therefore an "alternate payee" under ERISA.[24]

We adopt the Ninth Circuit's reasoning. First, we ask whether Alaska provides a "marital property right" to cohabitants. Alaska, like Washington, provides

---

[18]    *Id.*

[19]    *Id.* (quoting *Connell*, 898 P.3d at 836).

[20]    *Id*. at 1146.

[21]    *Id*. at 1145.

[22]    *Id*. at 1146.

[23]    I.R.C. § 152(d)(2)(H) (2012).

[24]    *Owens*, 551 F.3d at 1147.

for marital-like property distribution following a cohabitative relationship.[25]  Whether Nielsen and Boulds's relationship satisfies the requirements necessary for their property to be "marital" for ERISA's purposes under Alaska law is addressed below.  We then ask whether Nielsen falls into one of the qualifying classes of payees under ERISA.  Boulds claimed Nielsen as a dependent on his taxes and they shared a residence; Nielsen therefore qualifies as an "other dependant" under I.R.C. § 152(d)(2)(H), one of the classes of alternate payees permitted under ERISA.[26]  Boulds's argument that an order dividing the union pension cannot meet the requirements of 29 U.S.C. § 1056(d)(3)(B) therefore fails.  Federal law does not preclude distribution of part of the union pension to Nielsen, provided Nielsen is entitled to it under Alaska law.  We now address this question.

## B.    The Parties' Intent

We made clear in *Bishop v. Clark* that the first step in dividing an unmarried couple's property is to examine the couple's intent.[27]  We quoted our adoption of the Oregon Supreme Court's standard that " 'a division of property accumulated during a period of cohabitation must be begun by inquiring into the intent of the parties, and if an intent can be found, it should control that property distribution.' "[28]  We summarized the types of evidence courts have reviewed when determining explicit and implicit intent:

---

[25]    *See, e.g.*, *Bishop v. Clark,* 54 P.3d 804, 811 (Alaska 2002); *Wood v. Collins*, 812 P.2d 951, 956 (Alaska 1991).

[26]    29 U.S.C. § 1056(d)(3)(B)(i)(I); *id*. § 1056(d)(3)(B)(ii)(I), *id*. § 1056(d)(3)(K).

[27]    54 P.3d at 811.

[28]    *Bishop*, 54 P.3d at 811 (quoting *Wood*, 812 P.2d at 956 (quoting *Beal v. Beal*, 577 P.2d 507, 510 (Or. 1978) (en banc))).

In determining the intent of cohabiting parties, courts consider, among other factors, whether the parties have (1) made joint financial arrangements such as joint savings or checking accounts, or jointly titled property; (2) filed joint tax returns; (3) held themselves out as husband and wife; (4) contributed to the payment of household expenses; (5) contributed to the improvement and maintenance of the disputed property; and (6) participated in a joint business venture. Whether they have raised children together or incurred joint debts is also important.[29]

In the present case, the superior court expressly applied *Bishop* to determine the parties' intent with respect to various assets and debts. The court held that the union pension was intended to be a partnership asset and thus subject to division between Boulds and Nielsen. Specifically, the court explained:

> Mr. Boulds did, at one point in time during the relationship, list Ms. Nielsen as his beneficiary for this policy. That . . . is significant evidence to this Court of his intent to hold that asset as a partnership asset. Now Mr. Boulds has testified that that was not his intent, that his intent was merely . . . to list Ms. Nielsen so that when she received the benefit, she could use it for the benefit of the children.
>
> And I heard that testimony, but it doesn't really change my analysis because that testimony tells me that he considered her to be a trusted partner in that he would trust her to use the benefit for the benefit of their children. And so that demonstrates to me that there was an intent for them to work together toward a mutual goal, a [meritorious] goal, the protection of their children, the financial protection of their children. And so I find that Ms. Nielsen has met her burden of proof to establish that the [union pension] is a partnership asset.

---

**29**     *Id.* at 811 (citations omitted).

Boulds contends that the superior court misapplied *Bishop* by considering only his intent, when case law requires that both parties' intent be examined. In Boulds's view the required intent is "akin to a 'meeting of the minds' in contract theory." Boulds makes much of the fact that Nielsen was uninvolved in the couple's financial decisions, Nielsen did not contribute directly to the union pension, and listing Nielsen as a beneficiary to the union pension "was a unilateral act which Nielsen only became aware [of] after it was done according to her testimony." We reject Boulds's assertion that evidence of Nielsen's intent or knowledge with respect to the particulars of the parties' financial situation is necessary to determining intent under *Bishop*.

Our holding in *Reed v. Parrish* is instructive.[30] There we explained that "the [*Bishop*] factors are not exclusive; they reflect the factual circumstances of the case."[31] Today we further clarify that the intent of the cohabiting parties as articulated in *Bishop* does not mean that each party's intent necessarily must be analyzed separately for every individual piece of property.[32] In some cases, the parties' intent with respect to all or broad classes of property will be easy to infer based on evidence that "the parties formed a domestic partnership and intended to share in the fruits of their relationship as though married, justifying an equal division of their property."[33] We emphasize that simply living together is not sufficient to demonstrate intent to share property as though married, and, moreover, that parties who intend to share some property do not

[30]    286 P.3d 1054 (Alaska 2012).

[31]    *Id.* at 1058 (citation omitted).

[32]    When we have focused on a single asset it was because the parties have disputed only one asset. *See, e.g.*, *Tolan v. Kimball*, 33 P.3d 1152, 1154-56 (Alaska 2001) (examining whether parties intended house to be partnership asset).

[33]    *Reed*, 286 P.3d at 1057.

presumptively intend to share all property — even when the *Bishop* factors tilt heavily toward finding partnership property, other evidence may show that the parties had no such intent for particular pieces of property. But when the parties have demonstrated through their actions that they intend to share their property in a marriage-like relationship, a court does not need to find specific intent by each cohabitant as to each piece of property.

The superior court's determination that the parties intended to share the union pension as if they were married, like they shared their other property, was not in error. There was testimony that the parties wore wedding and engagement rings at various times. The court heard undisputed testimony that Boulds supported Nielsen financially. Boulds claimed Nielsen as a dependent on his taxes for at least some of the years they were together. Boulds worked outside the home, while Nielsen worked inside the home raising their children. Boulds apparently took on much of the financial responsibility for the couple, while Nielsen saw to other matters. Boulds listed Nielsen as his intended pre-retirement death beneficiary until he was told she could not be listed.[34] The superior court concluded that the couple had a common goal of using the pension fund to finance raising the children. Ample evidence "support[s] a finding that

---

[34] Our holding does not rest on the fact that Nielsen was listed as a beneficiary; there was ample evidence before the superior court that the parties intended to share the union pension under *Bishop*, even if Boulds had never listed Nielsen as his beneficiary. We note that under this analysis, Boulds's 401(k) account actually may have been partnership property as well. The superior court concluded that the 401(k) was Boulds's alone because there was no evidence in the record that he had ever listed Nielsen as a beneficiary. Such a listing is not necessary when there is sufficient evidence showing that under the *Bishop* factors the couple intended to share property. But because the ownership of the 401(k) account was not cross-appealed, we do not reach this question.

the parties were in a domestic partnership and intended to share property as though married."[35]

Boulds also implies that the superior court erred when it held that the parties intended to share the union pension without making specific findings supporting each of the *Bishop* factors. Such specific findings are not necessary. We will remand for additional fact-finding when "there are not sufficient findings to allow our review of . . . the parties' intent."[36] But that is not the case here. The superior court made sufficient findings of intent for our review; it applied *Bishop* and concluded that the parties intended to share the union pension. The superior court's analysis was correct.

IV. **CONCLUSION**

We AFFIRM the superior court's determination that Nielsen is entitled to half of Boulds's union pension and we REMAND for the superior court to determine payment.[37]

---

[35]    *Reed*, 286 P.3d at 1057.

[36]    *Jaymot v. Skillings-Donat*, 216 P.3d 534, 546 (Alaska 2009).

[37]    If there is concern that the pension administrator will refuse to honor the domestic relations order even in light of *Owens v. Auto Machinists Pension Trust*, 551 F.3d 1138, 1147 (9th Cir. 2009), discussed *supra* pp.5-8, the court may require an equalization payment from Boulds to Nielsen reflecting the present value of her share of the union pension.