**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2123
_____

CHERYL ANN GRUBER,
Appellant

v.

PPL RETIREMENT PLAN; PPL CORPORATION EMPLOYEE BENEFITS
DEPARTMENT PLAN ADMINISTRATION; PPL BENEFITS SERVICE AND
FIDELITY INVESTMENTS
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-11-cv-02188)
District Judge: Honorable Mitchell S. Goldberg
_____

Argued March 5, 2013

Before:   RENDELL, AMBRO, and VANASKIE, *Circuit Judges.*

(Filed: April 9, 2013)

David B. Rodes, Esq. (Argued)
Goldberg, Persky & White, P.C.
1030 Fifth Avenue
Pittsburgh, PA 15219
        *Counsel for Appellant*

Harrison Lee, Esq.
Frederick G. Sandstrom, Esq. (Argued)
Blank Rome LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103

1

_____

OPINION

_____

VANASKIE, *Circuit Judge.*

A Qualified Domestic Relations Order ("QDRO") entitles Appellant Cheryl Ann Gruber to 53% of the actuarial equivalent of her former husband's normal retirement benefit plus "53% of the value of *any* employer subsidy *for* early retirement" in the event that her ex-husband "retires prior to the attainment of age 65." (J.A. 58, ¶ 5) (emphasis added). Ms. Gruber's ex-husband, Bryn Lindenmuth, retired at age 57 when his job with PPL Corporation was eliminated as part of a reduction-in-force. Appellees PPL Retirement Plan, PPL Corporation Employee Benefits Department Plan Administration, and PPL Benefits Service (collectively, "PPL"), included in the calculation of Ms. Gruber's share of her ex-husband's pension the value of an employer subsidy that increased Mr. Lindenmuth's pension as a reward for his years of service with PPL, but excluded from that calculation the increase in her ex-husband's pension that was payable under a PPL policy that entitled an early-retirement eligible employee to the full amount that would have been payable at age 65 if he or she was terminated as part of a reduction-in-force and executed a general release. The District Court agreed with PPL's position, reasoning that the PPL separation policy did not provide a subsidy *for* early retirement because it was payable "on account of" contingencies other than early retirement, *i.e.*, a reduction-in-force and the execution of a general release. Having reviewed the matter *de novo*, we conclude that, because a purpose of the separation benefit is to enhance early

2

retirement benefits and is payable only to employees who are eligible for early retirement, the PPL policy does indeed provide a subsidy for early retirement. Accordingly, we will vacate the District Court's judgment, and remand with instructions that judgment be entered in favor of Ms. Gruber.

I.

Ms. Gruber's ex-husband, Bryn Lindenmuth, worked for PPL Corporation from 1976 until March 3, 2009, and participated in the PPL Retirement Plan ("Plan"). Mr. Lindenmuth and Ms. Gruber separated in December of 2004 and later divorced in 2005. As part of the divorce settlement, Ms. Gruber and Mr. Lindenmuth stipulated to a QDRO that designates Ms. Gruber as an alternate payee, entitling her to a portion of Mr. Lindenmuth's pension benefits under the Plan. The Plan approved the QDRO, which provides:

> 5. Portion of Participant's Accrued Benefit Awarded to Alternate Payee. The Alternate Payee will receive a benefit from the Plan . . . that is the actuarial equivalent of 53% of the present value of Participant's accrued benefit in the Plan determined as of December 20, 2004.
>
> . . . .
>
> For purposes of this Paragraph, the Participant's accrued benefit shall be determined in accordance with the terms of the Plan, including the applicable assumptions for actuarial equivalence as set forth in the Plan, but without taking into account the value of any subsidy in the Plan for early retirement benefits, or any increases or adjustments to Participant's accrued benefit under the Plan following Participant's separation from service.

3

If payments to the Alternate Payee commence while the Participant is still employed, the payment is to be computed as if the Participant had retired on the date on which payments to the Alternate Payee commence (but taking into account only the value of the benefits actually accrued and not taking into account the present value of any subsidy in the Plan for early retirement benefits). *If Participant subsequently retires prior to the attainment of age 65, the amount payable to Alternate Payee shall be recalculated to include 53% of the value of any employer subsidy for early retirement.*

(J.A. 58, ¶ 5) (emphasis added).

After Mr. Lindenmuth reached age 55 in August 2006, making him eligible for early retirement, Ms. Gruber elected to commence receipt of her monthly alternate payee benefit of $606.41, representing 53% of the actuarial value of Mr. Lindenmuth's benefit accrued as of December 20, 2004.[1] The amount received by Ms. Gruber was the age-based actuarial equivalent of Mr. Lindenmuth's accrued retirement benefit payable at age 65, without any adjustment to reflect the value of any employer subsidy to enhance retirement benefits for a Plan participant who retires early.

The PPL Plan included provisions that increased a participant's pension payment above the age-based actuarial equivalent of the participant's accrued retirement benefit based upon years of service. Specifically, Schedule B to the Plan provided for an increase in pension payments above the actuarial equivalent of accrued retirement

---

[1] Based on the Plan, "Gruber's benefit was adjusted to reflect (1) payment prior to Lindenmuth's 65th birthday and (2) Gruber's longer life expectancy, as she was five years younger than Lindenmuth. Gruber's resulting monthly benefit was $606.41, the actuarial equivalent of a $1,730.12 annuity commencing on Lindenmuth's 65th birthday." (Appellees' Br. 10.) The monthly amount of $1,730.12 was 53% of Mr. Lindenmuth's age-65 annuity of $3,264.38 accrued as of December 20, 2004.

4

benefits for Plan participants who retired before age 65 with more than twenty years of service with PPL. That is, PPL provided an early retirement subsidy for qualifying participants to receive an enhanced pension in recognition of their years of service to it.

The QDRO provides that if Ms. Gruber commenced her benefits while Mr. Lindenmuth was still employed, her payments would be based on the accrued value of the benefits as of December 20, 2004, and would not include "the present value of any subsidy in the Plan for early retirement benefits," (*id.*), because Mr. Lindenmuth's subsidy for early retirement would be unknown until his actual retirement. The QDRO also provides, however, that if Mr. Lindenmuth did retire before age 65, and the employer provided a subsidy for early retirement, *i.e.*, an increase in pension benefit greater than the age-based actuarially equivalent benefit, Ms. Gruber's alternate payee benefit would be recalculated to include 53% of the value of that subsidy.

Ms. Gruber continued to receive a monthly benefit of $606.41 from August of 2006 until 2009, when Mr. Lindenmuth was discharged and forced into early retirement as part of a company-wide reduction-in-force. The early retirement triggered the Schedule B subsidized early retirement benefit.[2] Pursuant to the QDRO, PPL

---

[2] Based on Mr. Lindenmuth's age and length of service, his "subsidized early retirement benefit . . . was equal to 80.7% of his age-65 accrued benefit." (Appellees' Br. 10-11.)

5

recalculated Ms. Gruber's benefit to include 53% of the Schedule B early retirement subsidy.[3]

In addition to the Schedule B partially subsidized early retirement benefit, Mr. Lindenmuth also qualified for an additional Plan benefit, under a policy known as "GP 401," which provided benefits upon the occurrence of certain organizational changes, such as reductions-in-force. Under GP 401, all employees were entitled to some benefits based on their base pay, and employees who signed a release were entitled to additional benefits based on their years of service. In addition to those benefits, GP 401 also provided "enhanced pension benefits under the PPL Retirement Plan" for employees, aged fifty-five and over, who signed a release and were eligible for retirement. (J.A. 302.) Among other things, these employees were "eligible to receive 100% of their accrued Retirement Plan benefit." (*Id.*) Having met all the preconditions under GP 401, Mr. Lindenmuth was therefore entitled to a fully subsidized early retirement benefit as a result of his separation due to PPL's reduction-in-force.

On March 26, 2009, PPL sent Mr. Lindenmuth a letter describing the effect of the QDRO on his pension payment options along with a "Post-Retirement Payment Option Election Form" for Mr. Lindenmuth to choose a payment option. After explaining that Ms. Gruber would receive 53% of his accrued benefit as of December 20, 2004, the letter stated:

---

[3] "This recalculation increased Gruber's monthly benefit to $1,150.88, the actuarial equivalent of a $1,730.12 age-65 annuity commencing on her benefit commencement date, with an 80.7% early retirement subsidy." (Appellees' Br. 11-12.)

6

> Under Separation (GP 401), your monthly straight-life
> annuity benefit amount is $4,481,15. The [QDRO] provides
> that the Alternate Payee's benefit will include 53% of the
> value of any employer subsidy for early retirement. Your
> enhancement under GP 401 is also actuarially reduced by
> 53%. Therefore, under the terms of the [QDRO], the
> Alternate Payee receives an actuarially equivalent monthly
> benefit of $2,261.08.

(J.A. 43.) The Post-Retirement Payment Option Election Form reflected the payment amounts referenced in the March 26 letter. On April 2, 2009, Mr. Lindenmuth selected a payment option and signed that form. According to the date stamp, PPL received the signed form on April 7, 2009.

On May 24, 2009, Ms. Gruber requested that her payments be recalculated to include her share of the GP 401 fully subsidized early retirement benefit. The Administrative Committee of PPL's Employee Benefit Board ("Plan Administrator"), however, denied Ms. Gruber's administrative claim and her subsequent appeal, reasoning that the GP 401 was payable due to the reduction-in-force, not for early retirement.

Ms. Gruber brought this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, seeking her share of the GP 401 benefits.[4] The parties filed cross-motions for summary judgment. Interpreting the phrase in the QDRO, "any employer subsidy for early retirement," the District Court concluded that the GP 401 subsidy was "not provided 'for' early retirement," interpreting "for" as meaning "because of" or "on account of." (J.A. 11 & n.1). The District Court determined that

---

[4] Mr. Lindenmuth is not a party to this action, and has filed nothing that opposes the arguments made by his former spouse.

7

because the GP 401 benefit applied as a result of a reduction-in-force and Mr. Lindenmuth's execution of a release, the GP 401 benefit did not constitute an employer subsidy for early retirement. Therefore, it held that Ms. Gruber was not entitled to 53% of the amount by which Mr. Lindenmuth's monthly pension was increased under GP 401.[5]

II.

A.

The District Court had jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(f), and we have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a district court's order granting summary judgment. *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 844 (3d Cir. 2011). Ordinarily, when an ERISA plan grants the plan administrator discretion to determine eligibility and benefits, judicial review of the plan administrator's determination is under an arbitrary and capricious standard. *Id.*[6] At issue here, however, is the interpretation of a judicially-approved contract—the QDRO— which entitles Ms. Gruber to 53% of "any employer subsidy for early retirement." We review the plan administrator's interpretation of this court order *de novo*. *See Hullett v.*

---

[5] As an alternative basis for her claim, Ms. Gruber also contended that the GP 401 early retirement enhancement was an "accrued benefit" as of December 20, 2004. The District Court rejected this contention, reasoning that, under ERISA, an "accrued benefit" is "expressed in the form of an annual benefit commencing at normal retirement age," 29 U.S.C. § 1002(23)(A), and the GP 401 benefit did not meet that criterion. Ms. Gruber does not appeal that part of the District Court's holding.

[6] We have also characterized the appropriate standard of review for the decisions of administrators with broad discretion as an abuse of discretion standard; however, "[i]n the ERISA context, the arbitrary and capricious and abuse of discretion standards of review are essentially identical." *Miller*, 632 F.3d at 845 n.2.

*Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 114 (3d Cir. 1994) (upholding *de novo* review of a "plan administrator's construction of [a QDRO], which involved issues of contract interpretation under the [QDRO] and not the Plan"); *see also Owens v. Auto. Machinists Pension Trust*, 551 F.3d 1138, 1142 (9th Cir. 2009) ("We review *de novo* the district court's review of a plan administrator's conclusions regarding legal obligations under a QDRO.").

B.

It is undisputed that the GP 401 benefit included a full retirement subsidy. By definition, the 100% retirement subsidy only applied to qualifying participants who had not yet reached the normal retirement age. Participants who had attained the normal retirement age would need no full retirement subsidy because they already would be eligible for full retirement benefits without actuarial adjustment. And participants who were not eligible for early retirement did not qualify for the employer-provided early retirement subsidy. Thus, the GP 401 enhanced pension only benefited a class of participants who were eligible for *early* retirement, such as Mr. Lindenmuth. Therefore, contrary to PPL's assertion and the District Court's conclusion, this benefit was an employer subsidy for early retirement so that eligible participants would not have to receive actuarially reduced retirement benefits when they were effectively forced to retire before age 65.

The reason why PPL provided the subsidy, *i.e.*, a reduction-in-force and execution of a general release, does not change the fact that the Plan participant's pension payment is increased over his actuarially calculated amount. In this respect, the benefit is

9

indisputably intended for early retirement purposes. If the motivation for the employer-provided benefit was the determinative factor in deciding which benefit qualified as a subsidy "for" early retirement, enhancements in pension benefits for years of service would likewise not fall within the QDRO's provisions. After all, that subsidy is not "on account of" early retirement, but "on account of" years of service that otherwise lack actuarial significance. PPL, however, does not contend that Schedule B fails to provide an employer subsidy *for* early retirement.

The preposition "for" has a plethora of meanings, one of which is the definition that the District Court applied: "because of" or "on account of." Def. 21, Oxford English Dictionary, http://www.oed.com/view/Entry/72761#eid0 (last visited on March 25, 2013). But another meaning is "to indicate purpose," such as a "grant *for* studying medicine." Def. 1, Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/for (last visited April 9, 2013).

The QDRO was intended to assure that Ms. Gruber would receive 53% of her ex-spouse's retirement benefit. This is made clear by the fact that it calls for an adjustment in her favor in the event that her ex-spouse retired early and PPL provided a subsidy to enhance his retirement benefit over that which otherwise would be payable. Interpreting the word "for" as signifying the purpose of the subsidy, *i.e.*, to increase the retirement benefits, is consistent with the parties' intent in the QDRO. In this case, the District Court recognized that GP 401 is indeed "akin to a 'retirement-type subsidy.'" (J.A. 11.) The District Court, however, then stopped short by considering the reason for the subsidy, but not its effect. In this case, the effect of GP 401 is to enhance early

10

retirement benefits, and it was error to interpret the preposition "for" as meaning "on account of." Instead, the correct interpretation of "for" is the purpose of the subsidy, which is to provide more substantial early retirement payments.

Importantly, PPL itself initially treated the GP 401 benefit as a subsidy for early retirement under the QDRO. PPL's supervisor of retirement and life insurance programs notified Mr. Lindenmuth in the March 26, 2009 letter that his "enhancement under GP 401 [was] also actuarially reduced by 53%" pursuant to the QDRO. (J.A. 43.) Furthermore, the record shows that Mr. Lindenmuth's signed Post-Retirement Payment Option Election Form included payment options with figures based on the 53% reduction of the GP 401 benefit, as indicated in the March 26 letter.[7] While PPL argues that its later correspondence with Ms. Gruber correctly stated its position that she was not entitled to a share of that benefit and that the March 26 letter must have been a mistake, we are not persuaded. The supervisor's March 26 letter to Mr. Lindenmuth and the corresponding figures on Mr. Lindenmuth's election form indicate, and we conclude, that the GP 401 benefit was a subsidy for early retirement within the meaning of the QDRO.

Our conclusion is supported by our decision in *Bellas v. CBS, Inc.*, 221 F.3d 517 (3d Cir. 2000). In *Bellas*, we explained that "[t]he provision of an early retirement benefit greater than the actuarial equivalent of the normal retirement benefit is . . . a *subsidized early retirement*." *Id.* at 525 (emphasis added). Our recognition in *Bellas* as to what constitutes a "subsidized early retirement" is indeed applicable in the present

---

[7] The record does not indicate whether Mr. Lindenmuth's subsequent payments reflected a 53% reduction of the GP 401 benefit.

context. Here, GP 401 provides for a "benefit greater than the actuarial equivalent of the normal retirement benefit." *See id.* As a result, the GP 401 meets the definition of a "subsidized early retirement" as described in *Bellas* and comports with our conclusion that it is a "subsidy for early retirement" within the meaning of the QDRO.

PPL's reliance on *Krusos v. Atlantic Richfield Co.*, No. Civ. A. 3:00-CV-01887-D, 2003 WL 21383656 (N.D. Tex. June 11, 2003), is unavailing. There, an ERISA plan participant, Pavlas, and his ex-spouse, Krusos, were parties to a QDRO, which provided that Krusos was entitled to receive 50% of Pavlas's accrued benefit as determined on the date of their divorce. *Id.* at *1-2. The QDRO also provided:

> If [Pavlas] *elects to retire* from the Plan before normal retirement age and *by reason of that early retirement the Plan provides an early retirement subsidy*, then [Krusos'] benefit shall be recomputed to provide [Krusos] with fifty percent (50%) of that portion of the subsidy attributable to the total accrued benefit on the date of divorce.

*Id.* at *1 (emphasis added). After Pavlas's employer terminated his employment due to a reduction-in-force, entitling him to an enhanced benefit, Krusos claimed that the benefit constituted an early retirement subsidy and sought a share of those benefits. *Id.* at *2-3. The District Court assumed that the particular benefit at issue—adding five years of age and service toward an affected employee's calculation of benefits—was a retirement subsidy, but concluded that Krusos was not entitled to a share of the benefit because it was not "'by reason of . . . early retirement,' as required by the QDRO," because the benefit was due to the loss of employment resulting from the reduction-in-force. *Id.* at *4.

12

*Krusos* is distinguishable in three crucial respects. First, the QDRO in *Krusos* required that the early retirement subsidy be "*by reason of . . .* early retirement," as opposed to the QDRO at issue here, which covers "any employer subsidy *for* early retirement." As explained above, the preposition "for" may be used "to indicate purpose," *i.e.*, "a grant for studying medicine." Def. 1, Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/for (last visited April 9, 2013). This is the sense in which we read the QDRO at issue here to use the preposition "for," *i.e.*, it covers *any* employer subsidy that has as its purpose an enhancement of early retirement benefits. Had the parties intended that only employer subsidies that are payable by reason of early retirement be included in calculating Ms. Gruber's share of Mr. Lindenmuth's pension, they should have expressed that intention more clearly, as was done in *Krusos*. Second, the QDRO in *Krusos* provided that Krusos was entitled to a share of an early retirement subsidy if Pavlas "*elect*[*ed*] to retire from the plan before normal retirement age . . . ." 2003 WL 21383656, at *1 (emphasis added). Here, however, there is no similar requirement in the QDRO that Mr. Lindenmuth's retirement must have been voluntary in order to allow Ms. Gruber to claim her share of the benefits. And third, the benefit in question in *Krusos*, which increased a plan participant's age and length of service by five years for purposes of benefits calculations, applied regardless of any early retirement and therefore would have applied to Pavlas even if he had been at the normal retirement age. *Id.* at *4. In contrast, the GP 401 benefit in this case is linked to early retirement because the value of the subsidy was based on a participant's eligibility for early retirement and

13

did not apply to participants who either were ineligible for early retirement or had reached normal retirement age.

In sum, we hold that the GP 401 benefit was an "employer subsidy for early retirement" within the meaning of the QDRO. Ms. Gruber is therefore entitled to 53% of that benefit. The District Court erred by concluding otherwise and granting summary judgment in favor of PPL.

## III.

For the foregoing reasons, we will vacate the judgment of the District Court, and remand with instructions to enter judgment in favor of Ms. Gruber.