*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DEWAYNE TOMAL, | ) | |
| | ) | Supreme Court Nos. S-16720/16760 |
| Appellant and | ) | |
| Cross-Appellee, | ) | Superior Court No. 1WR-16-00034 CI |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| JEANNETTE ANDERSON, | ) | No. 7282 – August 31, 2018 |
| | ) | |
| Appellee and | ) | |
| Cross-Appellant. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Wrangell, Kevin G. Miller, Judge pro tem.

Appearances: Robert S. Spitzfaden, Gruening & Spitzfaden, APC, Juneau, for Appellant/Cross-Appellee. Michael P. Nash, Law Offices of Michael P. Nash, P.C., Wrangell, for Appellee/Cross-Appellant.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

WINFREE, Justice.

## I.    INTRODUCTION

Alaska has long recognized unique legal standards for property disputes between two people ending a domestic partnership. Our case law has treated the end of a domestic partnership as coextensive with both the end of a marriage-like relationship and the end of the partners' cohabitation, as has generally been the case in the appeals

we have decided. But this appeal presents the novel factual circumstance of a couple who continued living together after their marriage-like relationship ended. We must therefore clarify several aspects of our domestic partnership case law to decide this appeal, including when and how a domestic partnership terminates, when post-partnership payments must be reimbursed, and how the trial court should award attorney's fees. Applying these clarified standards, we conclude that most of the trial court's property distribution was correct but that some minor aspects were in error. We therefore remand for the trial court to revise its property division.

## II.  FACTS AND PROCEEDINGS

DeWayne Tomal and Jeanette Anderson began living together in Wrangell in 1998. The following year Tomal bought beachfront land off the Zimovia highway (the Zimovia property); they began working to make it their permanent home. Anderson initially worked full time making the property habitable but later was sporadically employed, while Tomal sometimes worked on the property and sometimes earned money from other employment. The couple eventually restored a cabin on the property to serve as their primary home; they also docked Anderson's float house at the beach.

Tomal began experiencing financial difficulties shortly after he and Anderson began living at the Zimovia property. They took out a loan secured by the property to pay some of his debts, and Tomal granted the property to himself and Anderson as tenants-in-common to secure financing. Anderson then took over managing the couple's finances; her practice was to transfer money from the couple's joint bank account into her personal savings account, where the funds earned interest, then back into the joint account to pay bills. Tomal and Anderson each deposited their earnings into the joint account and Anderson used the commingled funds to pay joint expenses like the mortgage, credit cards, and utilities.

Tomal took a salaried construction job in 2005; he began accruing a

pension and continued contributing his earnings to the joint account. His work required him to live away from the Zimovia property during the construction season, usually from March to November. Anderson continued living and working at the property.

In July 2011 Tomal returned to the property during the construction season and discovered Anderson's money transfers from their joint account to her personal account. Tomal confronted Anderson and asked her not to transfer money into her personal account. Tomal then opened a separate bank account and began transferring money from the joint account into his separate account. Tomal also began depositing his earnings into and paying bills from the separate account. By the end of 2011 there was little money left in the joint account.

Early in 2012 Anderson told Tomal that she would no longer sleep in the same house as him. When Tomal returned from his seasonal construction work in the following winters, Anderson slept in the float house while he was home. Anderson remained in the cabin in 2015, after living in the float house in the winter became too difficult to manage. The parties cooked their own meals, did their own laundry, and engaged in separate employment while living in the same home.

Anderson obtained counsel in 2015 and proposed partitioning the Zimovia property. Tomal did not agree to the partition. Tomal filed suit against Anderson in 2016; he claimed that she was liable for her share of the Zimovia property expenses he had been paying and for unauthorized expenditures she had made with his earnings and credit card. Anderson denied making any unauthorized expenditures with Tomal's money and counterclaimed for a domestic partnership property division.

The superior court held a three-day bench trial in February and March 2017. Tomal and Anderson both testified about their relationship, living arrangements, finances, and property. Tomal also presented testimony from a pension-valuation expert setting three different values for his pension based on when the relationship might have

terminated, an accounting expert who analyzed the couple's financial transactions, and a real estate appraisal expert who valued the Zimovia property.

The court issued a written decision in April dividing the property. The court found that Tomal had not proved his misappropriation claims and that the parties were in a domestic partnership requiring equal division of property. The court found that the domestic partnership terminated in 2012, when Anderson told Tomal she no longer would sleep in the same house as him. The court also resolved various valuation disputes and included about $50,000 of Tomal's pension as partnership property. The court awarded Tomal the Zimovia property, valued at $275,000, and ordered him to make Anderson an equalization payment of a little less than $100,000. The court declined to credit Tomal for post-separation property expense payments, reasoning that "as cotenants, [the parties] continued to both contribute to the household in roughly equal fashion with . . . Tomal making the necessary payments to maintain the household and . . . Anderson doing other regular maintenance and upkeep."

Tomal sought reconsideration of the denial of post-separation expenses, and he sought prevailing party attorney's fees and costs.[1] Anderson asked that the court amend its judgment to grant her the Zimovia property, and she sought to enjoin Tomal from entering the property, citing a fear of domestic violence. Anderson attached a police report to support the reasonableness of her fear, which Tomal moved to strike as hearsay. Anderson also sought attorney's fees and litigation costs.

The court denied Tomal's reconsideration motion and Anderson's motions to amend the judgment and for a preliminary injunction. The court admitted the police report as evidence but excluded the hearsay statements it contained, except for one

---

[1] *See* Alaska R. Civ. P. 82(a) ("Except as otherwise provided by law or agreed by the parties, the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule.").

statement by a police officer. The court declined to award Tomal prevailing party attorney's fees, reasoning that the "divorce exception" applied.[2] The court instead awarded Anderson just over $500 in litigation costs in light of her "relative economic disadvantage" and nothing in attorney's fees because she did not provide sufficient factual support for an award.

Both parties appeal.

## III.   DISCUSSION

This appeal presents several novel issues of domestic partnership law. Anderson appeals the trial court's finding that the parties' domestic partnership terminated in 2012, requiring us to clarify when a domestic partnership terminates. Tomal appeals several of the court's rulings, requiring us to clarify when credit for post-separation property expense payments is appropriate and when the divorce exception to prevailing party attorney's fees applies to domestic partners. Both parties challenge aspects of the court's property distribution, requiring us to clarify both the appropriate legal standards for domestic partnership property distribution and the standards of review we will apply on appeal in such cases. We therefore begin by explaining the standards courts must use to divide property acquired during a domestic partnership, and how we

---

  **2**     *See Sanders v. Barth*, 12 P.3d 766, 768 (Alaska 2000) ("[Alaska] Civil Rule 82 authorizes awards of partial attorney's fees to prevailing parties in most civil litigation. . . . However, divorce cases represent a well-established exception to this general rule. Attorney's fees in divorce cases are 'based on the relative economic situations and earning powers of the parties,' rather than prevailing party status. This rule ensures that 'both spouses have the proper means to litigate the divorce action on a fairly equal plane.' " (footnote omitted) (first quoting *Kowalski v. Kowalski*, 806 P.2d 1368, 1372 (Alaska 1991); then quoting *Lone Wolf v. Lone Wolf*, 741 P.2d 1187, 1192 (Alaska 1987))).

will review that decision-making on appeal, before addressing the parties' arguments.[3]

## A.  Legal Standards For Domestic Partnership Property Distribution[4]

---

[3]  Tomal also argues that it was error to admit the police officer's statement in Anderson's proffered police report. But the police report was offered by Anderson to support *her* claim for post-decision relief, and the trial court denied that relief. Tomal has offered no reason that the police report has, or possibly could have, prejudiced him, so we do not reach this argument. *See Janes v. Alaska Railbelt Marine, LLC*, 309 P.3d 867, 875 (Alaska 2013) ("We will only reverse evidentiary rulings that are both erroneous *and prejudicial.*" (emphasis added)).

[4]  We note that this analysis is applicable only to domestic partners, i.e., unmarried cohabitants living in a marriage-like relationship. *See Boulds v. Nielsen*, 323 P.3d 58, 60 (Alaska 2014) (parties were unmarried cohabitants); *Reed v. Parrish*, 286 P.3d 1054, 1057 (Alaska 2012) (same); *Jaymot v. Skillings-Donat*, 216 P.3d 534, 544 (Alaska 2009) (same); *Bishop v. Clark*, 54 P.3d 804, 807 (Alaska 2002) (same); *Tolan v. Kimball*, 33 P.3d 1152, 1153 (Alaska 2001) (same); *D.M. v. D.A.*, 885 P.2d 94, 95, 97 (Alaska 1994) (same); *Wood v. Collins*, 812 P.2d 951, 953 (Alaska 1991) (same); *see also* AS 24.60.990(a)(5) ("In this chapter [regarding the legislature and lobbying] . . . 'domestic partner' means a person who is cohabiting with another person in a relationship that is like a marriage but that is not a legal marriage . . . ."); AS 39.50.200(a)(4) ("In this chapter [regarding public officers and employees] . . . 'domestic partner' means a person who is cohabiting with another person in a relationship that is like a marriage but that is not a legal marriage . . . ."); *cf. Timothy W. v. Julia M.*, 403 P.3d 1095, 1114 (Alaska 2017) (explaining that "domestic living partner" as used in Alaska Statutes Title 25, including AS 25.20.095(g), AS 25.20.110(g), and AS 25.24.150(g), encompasses individuals in "a shared, marriage-like, domestic environment"). Domestic partnership property division law is inapplicable to the equitable division of marital assets, which is governed by statute. *See Murray v. Murray*, 788 P.2d 41, 42 n.6 (Alaska 1990); *see also* AS 25.24.160(a)(4). Domestic partnership property division law is also inapplicable to property disputes between unmarried parties not in a domestic partnership, which is governed by the ordinary rules of property law. *See D.M.*, 885 P.2d at 97. If the parties dispute whether a domestic partnership exists, or when their partnership began, the trial court must examine if or when the parties cohabited in a marriage-like relationship before applying these standards. The eight factors we articulated in *Bishop* may help inform this analysis, 54 P.3d at 811, but they are not exclusive, *Reed*, 286 P.3d at 1058.

Property acquired by domestic partners during a domestic partnership should be distributed according to the partners' intent.[5] But property acquired after the partnership terminates is governed by the ordinary rules of Alaska property law.[6] The first step in distributing domestic partnership property therefore is to assess when the partnership began and ended. Relevant to this appeal, when a domestic partnership ends is a question of fact; the trial court must assess when the partners stopped cohabiting in a marriage-like relationship.[7] We will review the trial court's finding of when a domestic partnership ended for clear error.[8]

The second step is to classify each item of property held by the parties as partnership property or separate property based on applicable law. A statute or a valid contract between the parties — express or implied — will control the classification in the

---

[5] *Boulds*, 323 P.3d at 63.

[6] *See Wood*, 812 P.2d at 958 ("We hold that the rules of cotenancy apply after separation when the parties no longer were maintaining a domestic relationship."). In *Wood* and *D.M.* we grounded the intent analysis in cotenancy. *D.M.*, 885 P.2d at 97 & n.7; *Wood*, 812 P.2d at 958. But we clarified in *Tolan* that domestic partnerships do not require cotenant property interests. 33 P.3d at 1155-56. It is therefore more accurate to say that the ordinary property rules as a whole apply after separation, rather than only "the rules of cotenancy." *See Wood*, 812 P.2d at 958.

[7] *See supra* note 4 (clarifying that a domestic partnership in Alaska for property division purposes is a marriage-like relationship between unmarried cohabitants). A legal question may arise, however, if, as in this case, the parties dispute what a domestic partnership is. *See* discussion *infra* at p. 12.

[8] We will find clear error only if "we are left with a definite and firm conviction on the entire record that a mistake has been made." *Wood*, 812 P.2d at 954 n.2 (quoting *Martens v. Metzgar*, 591 P.2d 541, 544 (Alaska 1979)).

first instance.[9] But absent a controlling statute or a valid contract between the parties, property must be classified strictly according to the parties' intent.[10] "In some cases, the parties' intent with respect to all or broad classes of property will be easy to infer based on evidence that 'the parties formed a domestic partnership and intended to share in the fruits of their relationship as though married justifying an equal division of their property.' "[11] But not all property acquired during a partnership necessarily is intended to be partnership property: "We emphasize that simply living together is not sufficient to demonstrate intent to share property as though married, and, moreover, that parties who intend to share some property do not presumptively intend to share all property . . . ."[12] And parties may not intend to share property equally; for instance, a couple who purchase real property together may intend to share it according to their respective investments.[13] The trial court must be attentive to ensure that it properly determines the parties' intent for each disputed property item. The trial court's underlying findings as

---

**9** *See Boulds*, 323 P.3d at 61-63 (applying federal Employee Retirement Income Security Act to domestic partnership property distribution before applying intent analysis); *Bishop*, 54 P.3d at 808-10 (applying parties' property settlement agreements before applying intent analysis); *see also Marvin v. Marvin*, 557 P.2d 106, 113 (Cal. 1976) ("The fact that a man and woman live together without marriage, and engage in a sexual relationship, does not in itself invalidate agreements between them relating to their earnings, property, or expenses.").

**10** *See Boulds*, 323 P.3d at 63 ("[I]f an intent can be found, it should control that property distribution." (quoting *Bishop*, 54 P.3d at 811)).

**11** *Id.* at 64 (quoting *Reed v. Parrish*, 286 P.3d 1054, 1057 (Alaska 2012)).

**12** *Id.*

**13** *See D.M. v. D.A.*, 885 P.2d 94, 97 (Alaska 1994) ("If an intent to hold the property in a particular proportion or to determine the proportion by a particular method can be discovered, this intent controls . . . .").

to the parties' intent are factual findings reviewed for clear error.[14]  The trial court's

classification decisions based on statute, contract, or intent are applications of law to fact

reviewed de novo.[15]

The third step is to value the property.  The trial court's property valuations

are factual findings reviewed for clear error.[16]

The final step is to distribute the property.  Unlike in a divorce, where

equitable considerations dictate the final distribution, the trial court must distribute the

property strictly according to the property's character as determined by statute, contract,

---

[14]    *See Wood v. Collins*, 812 P.2d 951, 957 (Alaska 1991) ("[W]e accept the superior court's *finding* that [the partner] 'was to pay the vast majority of the upkeep, the mortgage, and other payments.' " (emphasis added)); *cf. Abood v. Abood*, 119 P.3d 980, 984 (Alaska 2005) ("[A] finding that the parties intended to treat property as marital will be disturbed only if it is clearly erroneous." (citing *Cox v. Cox*, 882 P.2d 909, 913 (Alaska 1994))).

[15]    *See Wood*, 812 P.2d at 955 n.4 ("Applying the law to a given set of facts is a question of law subject to de novo review.").  We note that we have previously framed this analysis as a de novo review without specifying that the underlying determination of the parties' intent is a factual question, which could be interpreted as reviewing what the parties intended de novo as a question of law.  *See Boulds*, 323 P.3d at 61 n.3 ("We determine the parties' intent by applying law to facts, a de novo review."); *Bishop*, 54 P.3d at 810-11 ("We treat the court's decision as finding that these cohabiting parties impliedly agreed to the distribution of property accumulated during cohabitation. . . . We review [this finding] de novo.").  That is incorrect; as we explain today, the correct rule is that what the parties intended is a question of fact, and the legal significance of that intent is a question of law.  To the extent *Bishop* and cases citing it have reviewed parties' intent de novo, those cases are disavowed.

[16]    *See D.M.*, 885 P.2d at 98 n.8 ("The value of the horses [belonging to the partnership] is a factual finding which may be reversed only if clearly erroneous." (citing Alaska R. Civ. P. 52(a))); *cf. Beals v. Beals*, 303 P.3d 453, 459 (Alaska 2013) (explaining in the analogous divorce context that "valuation of assets . . . is a factual determination that we review for clear error").

or the parties' intent.[17] Partnership property generally must be distributed equally (or unequally if the parties intended unequal shares), while separate property must be distributed solely to its owner.[18] But the trial court may assign different items of partnership property to the parties and order an equalization payment to ensure that each party receives the correct total share of partnership property.[19] There may be a number of reasonable ways to fairly allocate property in this process; we will review the trial court's allocation decisions, and its decision to order an equalization payment, for abuse of discretion.[20]

---

[17] *See Boulds*, 323 P.3d at 63; *see also Bishop*, 54 P.3d at 812 ("It was error to apply divorce law to divide the parties' property. . . . [T]he property the couple accumulated must be divided in accordance with their intentions.").

[18] *See Boulds*, 323 P.3d at 63-64 (affirming equal property distribution because parties intended property to be partnership asset). We note that in the analogous divorce context the trial court may "invade" separate property to ensure equitable division. *See Odom v. Odom*, 141 P.3d 324, 340 (Alaska 2006). This procedure may be improper for domestic partners because the parties' intent, rather than equity, controls the property distribution. But the trial court here did not distribute any separate property from one party to another, so we do not yet have to decide whether such invasion ever could be appropriate.

[19] *See Boulds*, 323 P.3d at 65 n.37 ("[T]he court may require an equalization payment . . . ."); *Bishop*, 54 P.3d at 811 ("[I]t was not error to award [a partner] a one-half interest in the disputed property not allocated by the 1996 settlement agreement — i.e., the furniture and appliances in the East Hill Road cabin and the proceeds from the sale of the Mountain View lot.").

[20] *Cf. Booth v. State*, 251 P.3d 369, 373 (Alaska App. 2011) ("[T]he 'abuse of discretion' standard of review applies to situations where the law allows or requires the judge to exercise discretion — to reach a decision by considering and weighing various factors, and then doing what seems most fair under the circumstances."); *Simone H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 320 P.3d 284, 287 n.8 (Alaska 2014) (quoting *Booth* approvingly).

## B. The Trial Court's Property Distribution

Having clarified the standards the trial court should use when distributing property acquired during a domestic partnership, we now evaluate the trial court's property distribution in light of these standards. We conclude that, although most of the distribution is proper, certain aspects are in error.

### 1. The trial court did not clearly err by finding that the domestic partnership ended in 2012.

The first step is to determine when the partnership began and ended. The trial court found that "the parties intended to and engaged in an equal partnership that they expected to continue indefinitely" and that "the domestic partnership did not end until 2012 when . . . Anderson told . . . Tomal that she would no longer sleep under the same roof."[21] The court also found that "[s]ince then, the parties became and remain reluctant co-tenants." This was not clearly erroneous.

We have emphasized that "simply living together is not sufficient to demonstrate intent to share property as though married."[22] By early 2012 the parties had separate finances and filed separate tax returns; they had not filed a joint tax return at least since 2005.[23] They lived separately, whether in different places or different parts of the same property. Although sometimes living together at the Zimovia property, each cooked their own meals, did their own laundry, and engaged in separate employment.

---

[21] The trial court found that the partnership began in 1998, and the parties have not asked us to review that finding; we thus accept for purposes of this appeal that the domestic partnership began in 1998.

[22] *Boulds*, 323 P.3d at 64.

[23] *See Bishop*, 54 P.3d at 811 (factors 1 ("made joint financial arrangements such as joint savings or checking accounts, or jointly titled property") and 2 ("filed joint tax returns")).

And, although after 2012 the parties continued to live at, maintain, improve, and hold the debt on the Zimovia property together,[24] this behavior is as consistent with a domestic partnership as with the trial court's conclusion that "[s]ince then, the parties became and remain reluctant co-tenants." We therefore cannot say the court clearly erred in finding the domestic partnership terminated in 2012; we have no definite and firm conviction that a mistake has been made.[25]

Anderson counters that domestic partnerships are a type of contract and that she and Tomal did not intend for their contract to terminate when their relationship did. But Anderson confuses the legal basis for distributing domestic partnership property with the domestic partnership itself. A domestic partnership in Alaska is a marriage-like relationship between unmarried cohabitants, not a contract. We explained in *Tolan v. Kimball* that domestic partnership property distribution applies even if "the essential elements of a contract were not present."[26] And, although Anderson and Tomal undoubtedly *could* have made a contract to control their property distribution over any other intent,[27] Anderson did not claim in the trial court that such a contract existed. It was therefore appropriate for the court to divide Anderson and Tomal's property based on the date it found the partnership terminated, and we affirm the court's selected date as not clearly erroneous.

---

[24] *See id.* (factors 1 ("jointly titled property"), 5 ("contributed to the improvement and maintenance of the disputed property") and 8 ("incurred joint debts")).

[25] *See supra* note 8.

[26] 33 P.3d 1152, 1154 n.4 (Alaska 2001).

[27] *See supra* note 9 and accompanying text.

### 2. It was error to classify certain property as partnership property.

The second step in distributing property acquired during a domestic partnership is to classify the property based on statute, contract, or the parties' intent. Tomal argues that the trial court erred by allocating a portion of his pension to the partnership because there was no evidence that the parties intended to share the pension. Anderson argues that the trial court erred by classifying Tomal's boat as his separate property and by classifying her truck as partnership property.

Tomal is correct that the trial court did not make specific findings on the parties' intent for the pension. But "[i]n some cases, the parties' intent with respect to all or broad classes of property will be easy to infer based on evidence that 'the parties formed a domestic partnership and intended to share in the fruits of their relationship as though married.' "[28] "[W]hen the parties have demonstrated through their actions that they intend to share their property in a marriage-like relationship, a court does not need to find specific intent by each cohabitant as to each piece of property."[29] Tomal's argument that there was no specific evidence of intent to share the pension is therefore misplaced. The trial court found that the parties "intended to and engaged in an equal partnership that they expected to continue indefinitely." The court also found that an "equal division of the assets [was] appropriate." The court made these findings in conformity with our case law and the evidence at trial. The court did not clearly err by finding that the parties intended to share the pension as part of their broad intent to share property acquired during the partnership, and it thus did not err by classifying only the portion of the pension accumulated during the partnership as partnership property.

---

[28] *Boulds v. Nielsen*, 323 P.3d 58, 64 (Alaska 2014) (quoting *Reed v. Parrish*, 286 P.3d 1054, 1057 (Alaska 2012)).

[29] *Id.*

As to Tomal's boat, he consistently testified that he bought the boat in 2012, and the court could have reasonably credited that testimony. The court did not clearly err by implicitly finding that Tomal acquired the boat after the parties' separation. Anderson challenges this conclusion by arguing that "the record clearly evinces that . . . Tomal used [partnership] funds" to buy the boat and that therefore either the funds he withdrew from the partnership must be restored or the boat must be classified as partnership property. But the record does not require such an inference. Tomal testified that he paid for the boat from his personal bank account after the parties' finances were separated, and, contrary to Anderson's argument, his accounting expert reported that the pension funds he withdrew before the separation were used to pay partnership expenses. The court could have reasonably credited this evidence to find that Tomal bought the boat with his own funds, and the court therefore did not err by classifying the boat as separate property.

We take a different view of Anderson's truck. The only evidence on this issue presented at trial reflects that Anderson acquired her truck after the domestic partnership had terminated. It was clearly erroneous to implicitly find that Anderson acquired the truck before the separation, as nothing in the record supports that finding. It was therefore error to classify the truck as partnership property.

### 3. It was clear error to value the excavator at less than fair market value.

The third step is to value the property. Anderson argues that the trial court clearly erred by valuing an excavator at $1,000 when Tomal testified that a neighbor offered to pay $6,000 for it.

We agree with Anderson that it was clear error to value the excavator at $1,000 given this record. We have explained in the analogous divorce context that "[i]n

valuing a marital asset, the court should look to the asset's fair market value."[30]  The same rule applies here.  Tomal testified that he paid $1,000 for the excavator and that it had several problems needing repair before it could be sold.  But he also testified that a neighbor offered to pay him $6,000 for the excavator without any further repairs.  Given the lack of any other testimony about what a willing buyer would pay, $6,000 was the best fair market value evidence in the record.[31]  It was clear error for the trial court to value the excavator at $1,000.

### 4. The trial court did not abuse its discretion by requiring an equalization payment.

The final step is to distribute the property by allocating the assets and, if necessary, requiring an equalization payment.  Tomal argues that the trial court erred in this process because it ordered an equalization payment and thus effectively ordered him to cash out his pension.  Tomal argues that the parties did not intend for him to cash out his pension and that such intent was necessary before the trial court could order him to do so.

We reject Tomal's argument because he misunderstands the basis for the trial court's order.  The court did not require Tomal to cash out his pension; instead the court explicitly wrote:  "Tomal can certainly use his retirement funds to pay

---

[30]  *Doyle v. Doyle*, 815 P.2d 366, 369 (Alaska 1991) (alteration in original) (quoting *Nelson v. Jones*, 781 P.2d 964, 970 (Alaska 1989)).

[31]  *Cf. id.* at 370 n.6 ("[F]air market value is a single, unitary figure, commonly defined as '[t]he amount at which property would change hands, between a willing buyer and a willing seller, neither being under compulsion to buy or sell and both having reasonable knowledge of the relevant facts.' " (quoting *Fair Market Value*, BLACK'S LAW DICTIONARY (6th ed. 1990))); *see also Value*, *Fair Market Value*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("The price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction; the point at which supply and demand intersect.").

. . . Anderson, but I leave it to him to determine whether to use those funds, take out another loan or find some other source of funds." This was an appropriate course of action. As we noted in *Boulds v. Nielsen*, "the court may require an equalization payment from [the pension-holding partner] to [the other partner] reflecting the present value of her share of the . . . pension."[32] The court did not lack authority to order an equalization payment as part of its property division, and Tomal has not argued on appeal that the equalization payment amount will cause him undue hardship.[33] We therefore must conclude that the trial court did not abuse its discretion by ordering the equalization payment.

C.     **Post-Separation Property Expenses**

We held in *Wood v. Collins* that "the rules of cotenancy apply after separation when the parties [are] no longer maintaining a domestic relationship."[34] We applied this rule in *Wood* to hold that a domestic partner who paid all of the property-related expenses for property held by both partners could receive reimbursement for half of those payments post-separation.[35] Tomal argues that under this rule he is entitled to credit for half of the Zimovia property payments he made post-separation.

---

[32]     323 P.3d at 65 n.37.

[33]     *Cf. Fortson v. Fortson*, 131 P.3d 451, 459 (Alaska 2006) (stating in divorce context that "[c]ash awards are a permissible means of dividing illiquid marital assets *where they would not impose a hardship on the paying party*" (emphasis added)).

[34]     812 P.2d 951, 958 (Alaska 1991).

[35]     *Id.*

We take this opportunity to clarify the legal standard for such reimbursement, known as "contribution."[36] "As a general rule, each tenant in common is responsible and ultimately liable for his or her share of all the necessary expenses incurred maintaining and preserving the common property in proportion to his or her ownership interest."[37] When one tenant pays all of the property expenses, that tenant may receive contribution from the other tenants proportionate to the tenants' shares in the home.[38]

A tenant's right to contribution, however, is not unlimited. "The situations in which contribution for upkeep or repairs is not allowed are generally ouster, the existence of an agreement to the contrary, a property division in a marital dissolution case, and *where the result would be inequitable*."[39] Though we have never explicitly stated that contribution is an equitable right, our past cases on this issue have intimated as much. In *Wood* we affirmed the trial court's decision to award contribution based on "fairness" — i.e., equity.[40] And in *Reed v. Parrish* we held that the superior court did not abuse its discretion by declining to credit a paying partner with half the post-

---

[36]   *See* 86 C.J.S. *Tenancy in Common* § 90 (2018).

[37]   *Id.* (footnotes omitted); *see also Wood*, 812 P.2d at 958 ("Here, [the paying partner] has made all the payments on the condominium from the time of separation. Hence, [the nonpaying partner] must reimburse [the paying partner] for [the nonpaying partner's] share of the post-separation payments.").

[38]   *See Wood*, 812 P.2d at 958.

[39]   86 C.J.S. § 90 *supra* note 36 (emphasis added).

[40]   812 P.2d at 957-58. We also explicitly stated in *Wood*, referring to renovations, not necessary upkeep, that the "right to reimbursement" — a comparable right to contribution, *see* 86 C.J.S. § 92 *supra* note 36 — is "an equitable right and recovery should be just and equitable under all the circumstances." 812 P.2d at 959.

separation payments.[41] We predominantly analyzed the post-separation payments in *Reed* — ordered by the court as part of a domestic violence protective order — as necessary relief to protect the domestic violence victim, but we then explained:

> Further, the post-separation mortgage payments maintained the status quo, ensuring that the children's stability was maximized while the parties litigated their dispute. The parties had long structured their relationship with [the non-paying partner] staying home to raise the children. To disrupt that arrangement during the pendency of the court hearing would have been unfair to the children and was contrary to the intent of the parties.[42]

Such language reflects that whether to award contribution to a paying partner is within the discretion of the trial court and can largely depend on equitable factors, rather than rigid legal obligations. We therefore conclude that a tenant-in-common who pays more than a proportionate share of property expenses may be denied contribution if contribution would be inequitable.[43] We will review the trial court's decision to deny contribution on equitable grounds for abuse of discretion.[44]

---

[41]     286 P.3d 1054, 1058 (Alaska 2012).

[42]     *Id.* at 1058-59.

[43]     We note that other jurisdictions have long treated contribution as an equitable, rather than legal, right. *See, e.g.*, *Palanza v. Lufkin*, 804 A.2d 1141, 1145 (Me. 2002) (describing contribution as equitable), *abrogated on other grounds by Wicks v. Conroy*, 77 A.3d 479, 484 (Me. 2013); *Caccamise v. Caccamise*, 747 A.2d 221, 231-32 (Md. Spec. App. 2000) (same); *Strohm v. Koepke*, 90 N.W.2d 495, 497 (Mich. 1958) (same); *Cleys v. Cleys*, 363 N.W.2d 65, 71 (Minn. App. 1985) (same); *Capital Fin. Co. of Del. Valley v. Asterbadi*, 942 A.2d 21, 28 (N.J. App. Div. 2008) (same); *Clute v. Clute*, 90 N.E. 988, 990 (N.Y. 1910) (same); *Tisdale v. Tisdale*, 34 Tenn. 596, 599 (1855) (same).

[44]     *Cf. Cook v. Cook*, 249 P.3d 1070, 1082-83 (Alaska 2011) ("[W]e review

(continued...)

After hearing all the evidence and fashioning a property distribution in light of our domestic partnership case law, the trial court in this case determined that an award of post-separation property expense payments would not be appropriate. The court found that "as cotenants, [the parties] continued to both contribute to the household in roughly equal fashion with . . . Tomal making the necessary payments to maintain the household and . . . Anderson doing other regular maintenance and upkeep." Tomal has not challenged this finding on appeal, instead arguing that the trial court impermissibly offset his payments against Anderson's labor. But the issue is not "offsetting"; the issue is whether ordering Anderson to pay Tomal contribution would have been equitable under the circumstances. The trial court concluded that it would not have been, and its findings reflect that Anderson reasonably could have believed that Tomal did not expect her to pay for half of the property expenses while she continued maintaining the property. We cannot say that it was an abuse of discretion to decline to credit Tomal for post-separation property expense payments.

## D.     Attorney's Fees And Costs

Tomal argues that the trial court erred by declining to award him prevailing party attorney's fees under Alaska Civil Rule 82. Tomal argues that the court erred by applying the divorce exception to this case to award Anderson minimal costs in lieu of awarding either party prevailing party attorney's fees. Tomal also argues that he should have been awarded fees even if the divorce exception were applied.

"Attorney's fees in divorce cases are 'based on the relative economic situations and earning powers of the parties,' rather than prevailing party status."[45] This

---

[44]     (...continued)
a trial court's decision on equitable relief for abuse of discretion.").

[45]     *Sanders v. Barth*, 12 P.3d 766, 768 (Alaska 2000) (quoting *Kowalski v.*
(continued...)

divorce exception also extends to actions between domestic partners, but it "is not intended to apply to every child support [or property division] case between unmarried couples."[46] Instead the divorce exception is "reserved for cases that closely resemble divorce actions and for cases that involve disputes — such as disputes about custody or the initial division of property — for which it is of paramount importance that the parties be able to litigate on a 'fairly equal plane.' "[47] We have previously applied the divorce exception to cases involving unmarried parents litigating child custody and support.[48] But we have not applied the divorce exception to a case between unmarried couples deciding only property issues.[49] We must therefore decide whether this case "closely resemble[s]" a divorce action such that the divorce exception to Rule 82 applies;[50] this is a "determination of which statute or rule applies to an award of attorney's fees . . . that we review de novo."[51]

---

[45]      (...continued)
*Kowalski*, 806 P.2d 1368, 1372 (Alaska 1991)).

[46]      *Id.* at 769.

[47]      *Id.* (quoting *Lone Wolf v. Lone Wolf,* 741 P.2d 1187, 1192 (Alaska 1987)).

[48]      *See, e.g.*, *Koller v. Reft*, 71 P.3d 800, 809 (Alaska 2003); *Bergstrom v. Lindback*, 779 P.2d 1235, 1238 (Alaska 1989).

[49]      Previous appeals between domestic partners have had Rule 82 attorney's fees at issue, but, apparently, no party raised the divorce exception's applicability. *See, e.g.*, *Wood v. Collins*, 812 P.2d 951, 957 (Alaska 1991); *Levar v. Elkins*, 604 P.2d 602, 604 (Alaska 1980). We once upheld Rule 82 attorney's fees in a domestic partnership property division over an argument that the divorce exception should apply, but we did so without any detailed analysis. *Bishop v. Clark*, 54 P.3d 804, 814 (Alaska 2002).

[50]      *See Sanders*, 12 P.3d at 769.

[51]      *Koller*, 71 P.3d at 808.

"The purpose of [the divorce exception] is to ensure the parties can litigate on a 'fairly equal plane.' "[52] This rationale applies to domestic partnership property division immediately after a break-up as much as it does to child support in the same time period. If one person has relied on a partner to provide income for the couple's way of life, that person's inability to "litigate on a fairly equal plane" could result in severe hardship during litigation; such hardship could potentially extend indefinitely if the property division does not adequately protect the economically disadvantaged partner. We cannot rationally conclude that the absence of a child support or child custody dispute makes the divorce exception per se inapplicable. We therefore hold that the trial court may appropriately apply the divorce exception to cases involving "the initial division of property" after "the break-up of the long-term relationship."[53]

Tomal argues that this case is not an "initial division of property" because the parties separated in 2012 and litigation did not begin until 2016.[54] But this case differs from past domestic partnership disputes we have resolved because in most cases the partners stopped living together after the domestic partnership terminated. Here Tomal and Anderson continued living together on the Zimovia property after the partnership terminated, sharing land and personal property, thus making the trial court's property division the "initial division of property" of the partnership assets within the

---

[52] *Osterkamp v. Stiles,* 235 P.3d 178, 192 (Alaska 2010) (quoting *Sanders*, 12 P.3d at 769).

[53] *See Sanders*, 12 P.3d at 769. We therefore disavow our approval of using Rule 82 in this context in *Bishop*, 54 P.3d at 814. *See supra* note 49.

[54] *Cf. id.* (explaining that most "quasi-divorce cases between unmarried couples occur almost immediately after the break-up of the long-term relationship" and concluding that the divorce exception should not apply to a child support dispute occurring more than ten years after the break-up).

scope of the divorce exception. Though some years elapsed between the partnership's end and litigation beginning, it was no less important that the parties "litigate on a fairly equal plane" in 2016 than it would have been in 2012. We therefore conclude that the trial court did not err by applying the divorce exception.

We last consider Tomal's argument that, even applying the divorce exception, he should have been awarded attorney's fees. "The award of attorney's fees in a divorce action . . . rests within the broad discretion of the trial court and will not be disturbed on appeal unless it is 'arbitrary, capricious, or manifestly unreasonable.' "[55] The trial court found that Anderson was the economically disadvantaged party and that she should receive "her fixed and reasonable" costs of just over $500. This award was not "manifestly unreasonable."[56] Though Tomal is older than Anderson and is taking on a larger share of the partnership's debt, he also is retaining the Zimovia property, can rely on his pension in the future, and earns substantially more income than Anderson. In light of these factors the court did not abuse its discretion by granting Anderson the relatively modest award of $500 in costs, especially considering she received nothing in attorney's fees.[57]

---

[55] *Ferguson v. Ferguson*, 195 P.3d 127, 130 (Alaska 2008) (quoting *Hopper v. Hopper*, 171 P.3d 124, 129 (Alaska 2007)). The parties in *Ferguson* were divorced, but the relevant standard of review does not change between divorce cases applying the divorce exception and domestic partnership cases applying the divorce exception. *See Koller*, 71 P.3d at 808 (reviewing final attorney's fees award under divorce exception for abuse of discretion); *Osterkamp*, 235 P.3d at 192 (reviewing interim attorney's fees award under divorce exception for abuse of discretion); *Bishop*, 54 P.3d at 814 (reviewing interim attorney's fees award under divorce exception for abuse of discretion).

[56] *See Ferguson*, 195 P.3d at 130 (quoting *Hopper*, 171 P.3d at 129).

[57] *Cf. Osterkamp*, 235 P.3d at 192 (concluding trial court did not abuse its (continued...)

## IV.  CONCLUSION

Except as otherwise noted, we AFFIRM the trial court's rulings.  We REMAND for the trial court to recalculate the equalization payment in light of our opinion.  We do not retain jurisdiction.

---

**57**  (...continued)
discretion when it awarded $5,000 in interim attorney's fees, after "consider[ing] the parties' respective incomes and other sources of equity, including [the non-awarded partner's] continued possession of the house, the parties' sole significant asset").