*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MICHAEL GALLAGHER, | ) | |
| | ) | Supreme Court No. S-18802 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-22-05996 CI |
| v. | ) | |
| | ) | O P I N I O N |
| SARAH MAJORS, | ) | |
| | ) | No. 7732 – November 29, 2024 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Herman G. Walker, Jr., Judge.

Appearances: Michael Gallagher, pro se, Big Lake, for Appellant. Taylor R. Thompson, Thompson Law Group, Anchorage, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

HENDERSON, Justice.

## I. INTRODUCTION

A man and woman who had been in a long-term domestic partnership ended their relationship and sought a distribution of partnership assets. Each initially disputed whether certain property items were part of the domestic partnership estate or owned separately by one of the parties. After prompting by the court, the parties stipulated to the value of many items and that the man would receive them. But the stipulation did not clearly address whether those items were included in the partnership

estate, and the court did not receive evidence to indicate whether or not the property items belonged to the man or the partnership. The court nonetheless treated the items as partnership property and awarded the items as the parties had agreed, resulting in a substantial equalization payment owed by the man to the woman. The man appeals, asserting that two items of property were his separate property, not property of the partnership. Because the court's characterization of this property was unsupported by the parties' stipulation or by the evidence on record, we vacate the court's property distribution order and remand for further proceedings.

## II.  FACTS AND PROCEEDINGS

### A.  Dissolution Of Domestic Partnership And Pretrial Conference

Michael Gallagher and Sarah Majors lived as domestic partners, without marrying, for almost two decades. Gallagher and Majors have one adult child together, and each has adult children from previous relationships.

Gallagher and Majors separated between October 2020 and February 2022. Majors, through counsel, filed an action in court for distribution of the property of the domestic partnership.[1] Gallagher, representing himself, answered Majors's complaint, and asserted that the property that had served as the couple's home, 3730 South Mink Street, was his separate property because it had been gifted to him by his father prior to his relationship with Majors. Gallagher also asserted that Majors had surreptitiously altered the title to the property to be in her name. Meanwhile Majors contended that both parties contributed funds toward the home. The court scheduled a two-day trial in December.

During a November pretrial conference, the parties addressed Majors's request to reduce their trial time to one day in light of her attorney's schedule. Gallagher

---

[1] *See Tomal v. Anderson*, 426 P.3d 915, 924 (Alaska 2018) ("Partnership property generally must be distributed equally (or unequally if the parties intended unequal shares), while separate property must be distributed solely to its owner.").

agreed, and the parties were thereafter scheduled for a one-day trial. Additionally the court ordered the parties to discuss whether some or all of the issues between them could be settled. The court explained to Gallagher that "usually parties and attorneys would have discussions in cases to try to see if they can resolve this case short of trial."

## B. Trial And Property Distribution Order

The court held a property and custody trial in December. At the beginning of the trial, Majors's attorney informed the court that there were "a couple pieces of real property" at issue, with "a couple different values for those two items," and "a business that may or may not be a partnership asset," stating that Gallagher's position was that it was not a partnership asset. Majors referred to a property spreadsheet and provided the court a copy. The spreadsheet listed a column of several items of property including real property and personal property, as well as debts. The row for each property item included a small box to indicate whether the property was "marital," each party's proposed valuation, and each party's proposed distribution. All property items were listed "n" as in "no," for their "marital" character. The last page of the spreadsheet included the parties' calculated values of all assets, minus all debts. It also listed what share of the partnership estate each party would receive and a calculation of "Total Equalization Payment to Be Paid to This Party Based on 50% of the Difference between Husband's and Wife's Proposed Distribution."

The court twice asked Gallagher if he had had a chance to review the spreadsheet, and Gallagher replied in the affirmative. The court further asked Gallagher if he gave his input into the spreadsheet, and he responded that he had.

The court then asked what properties were in dispute. Majors, through her attorney, stated, "I think the [Mink Street property], we agree it's currently titled [in] Ms. Majors's name so technically it could be seen as a separate asset, but she doesn't want to argue that. She wants to give him the house, so we agree on that . . . at [$250,000]." Next, Majors and Gallagher discussed other real property, informing the court that the only dispute over those parcels was about their value, and that Gallagher

would agree to paying Majors for half the value. Majors then stated that Gallagher had agreed to pay unpaid property taxes and those would be assigned to him as a debt as indicated on the spreadsheet.

The court then inquired about G-Force Transmission & Auto, LLC,[2] which it referred to as "the business." Majors's attorney said it might be acceptable to value G-Force at Gallagher's value of $100,000. Gallagher then tried to explain the purpose of a loan connected to G-Force that Majors took on, but the court indicated that Gallagher would need to wait until it was time for him to testify. The court then moved on to non-property issues until it took a recess.

When the court returned from recess, it inquired into whether the parties had resolved any issues. Majors's attorney informed the court that the parties had "agreed on . . . a couple things" and that she had "printed a new spreadsheet" that reflected the recent agreements.

Regarding G-Force, Majors's counsel stated, "Line 44 is the business. We're fine with the valuation that Mr. Gallagher came up with of 100 thousand. So we will stipulate to that, and I've updated it on the spreadsheet." The court asked Majors to clarify that she was referring to line 44 of the spreadsheet, and that Gallagher was "getting the business." As the parties discussed each property item the court noted changes on the spreadsheet. The court did not inquire whether Gallagher had reviewed the new spreadsheet or whether Gallagher agreed that G-Force would be considered a partnership asset.

Majors then listed other items that the parties agreed upon, including their valuation and proposed assignment. After Majors's attorney explained that the parties agreed that Gallagher would pay outstanding property taxes, she asked Gallagher to

---

[2] Because the parties disagree whether the valuation on the spreadsheet was for the whole business or Gallagher's half-ownership interest in the business we use the term "G-Force" to describe this property item.

- 4 -                                                                                   7732

correct her if she had stated anything incorrectly, to which he replied, "No, you're right." The court referenced G-Force again, stating, "Line 44, everybody's in agreement that's $100,000," to which no one objected.

Majors then suggested the court conduct an informal trial[3] and review each item in dispute, to which the court agreed. The court proceeded to review all property items on the spreadsheet for which the parties disagreed on value or assignment. At one point while receiving evidence on disputed items, the court explained to Gallagher that since the parties were not married, the court was splitting the assets up, "like a business." The court also excluded some property items it concluded were not subject to distribution from the spreadsheet. Before discussing the distribution of personal property not listed on the spreadsheet, the court asked if "[e]verybody's in agreement [that G-Force's value is] $100,000?," to which there was no objection.

## C.    Court Findings And Equalization Payment

In early June 2023 the court issued its property distribution order and a corresponding spreadsheet. The court concluded that Gallagher and Majors were in a "long-term domestic relationship" and had "accumulated several partnership assets" that it would divide "50/50." It explained that decisions about whether "disputed property" is partnership property are based on the parties' intent.[4] The court concluded that:

> property available for distribution is on the parties' spreadsheet. The parties agreed to several of the items as being partnership property and the values. The [c]ourt heard testimony on different values [and] whether or not the items are for the children [or] are partnership property.

---

[3]    Under certain circumstances in domestic relations cases, including property division, the trial court can proceed where "the traditional format used to question witnesses at trial does not apply." Alaska R. Civ. P. 16.2(b).

[4]    *Tomal*, 426 P.3d at 922.

It then proceeded to "address the contested values and whether certain property is partnership or not." Of those items on appeal, the court only discussed G-Force, stating, "[e]veryone agrees that [G-Force] is valued at $100,000 and belongs to Gallagher." The court's spreadsheet listed the parties' pretrial valuations for G-Force and both parties' proposal that Gallagher receive the property item at a $100,000 valuation, which the court ultimately awarded. The court also listed the Mink Street property on the spreadsheet, indicating that both Gallagher and Majors valued the home at $250,000, that both proposed he receive it, and that he would receive it at that value. The court's spreadsheet indicated a "Y" for most property items including the Mink Street property to indicate each was "Marital." It also noted a "D" by a few property items, including G-Force, to indicate those items were "Disputed."

After discussing particular items of property, the court's order noted that "there was no dispute concerning what was partnership property," concluding that "all assets on the spreadsheet are partnership assets and available for distribution." Based on the court's allocation of assets and valuations, the court determined that Gallagher owed Major an equalization payment of $198,902.

In July 2023 the court held a brief telephonic status hearing to discuss the equalization payment. During the hearing Gallagher aggressively disagreed with the court's order, eventually requiring the court to mute him to maintain courtroom decorum.

Gallagher appeals.

## III. STANDARD OF REVIEW

Because stipulations are a form of contract,[5] we review the interpretation of a stipulation de novo.[6] The superior court's decisions whether certain property items are part of the domestic partnership estate "based on statute, contract, or [the parties'] intent are applications of law to fact reviewed de novo."[7] The court's underlying findings of fact, including findings about what the parties intended, are reviewed for clear error.[8]

## IV. DISCUSSION

### A. The Record Does Not Support The Conclusion That Gallagher Stipulated That The Mink Street Property And The G-Force Business Were Partnership Property.

On appeal Gallagher argues that the superior court erred when it included the Mink Street property and G-Force in the partnership estate because they were his separate property. Majors disagrees, contending that the parties stipulated to the value of both property items and that each would be awarded to Gallagher. She also asserts that the court properly divided the partnership property, that Gallagher "had input into" the property division, and that he understood that the Mink Street property and G-Force "were subject to division." But we reject her argument that this record supports an agreement between the parties that the Mink Street property and G-Force were property of the domestic partnership.

We begin by outlining the structure of a court's decision-making in domestic partnership dissolution proceedings. Where there is no dispute that a domestic

---

**5**      *See Colton v. Colton*, 244 P.3d 1121, 1127 (Alaska 2010); *Crane v. Crane*, 986 P.2d 881, 885 (Alaska 1999).

**6**      *Ass'n of Vill. Council Presidents Reg'l Hous. Auth. v. Mael*, 507 P.3d 963, 972 (Alaska 2022).

**7**      *Tomal*, 426 P.3d at 923.

**8**      *Id.*

partnership existed, the court must address three questions about each property item that is potentially partnership property: (1) whether the property is owned separately by one of the parties or by the partnership (i.e., characterizing the property), (2) what the value of the property is, and (3) if the property item is a partnership asset, to whom it should be assigned.[9] A property division spreadsheet can help the court understand each party's position regarding each of those aspects of the property at issue. Parties can, and often do, enter agreements regarding one or more of these three issues.[10] But a party can stipulate or agree to a property item's valuation and potential assignment by the court while still contesting whether or not it should be characterized as partnership property. And particularly where a party is unrepresented by counsel, it can be difficult to ascertain that party's position regarding each of these questions from a spreadsheet alone.[11]

Indeed, the parties' property spreadsheets used in this case likely contributed to the confusion about whether there was any agreement about the characterization of property items. The parties' initial spreadsheet did identify the proposed valuations and assignments of property by Gallagher and Majors, but it did not identify their positions on the property's character. Nor does the subsequent property spreadsheet that Majors presented to the court reflect the parties' positions on, or any agreement about, the character of particular property items. The result is that Gallagher could understandably conclude he was receiving the Mink Street property and G-Force as his separate property. The court and Majors's counsel may have

---

[9]   *Id.* at 922-23.

[10]   *See* Alaska R. Civ. P. 81(f) (Stipulations).

[11]   We have previously concluded that a represented party waived his appeal about items subject to property distribution because he failed to raise those issues at trial where he, through his attorney, had "ample opportunity to view" the other party's property distribution spreadsheet and observe the proceedings. *Rasmussen v. Rasmussen*, No. S-15460, 2015 WL 1279246, at *2 (Alaska Mar. 18, 2015).

understood that the court was only making orders on distribution of property where that property belonged to the domestic partnership, but it is not at all clear that Gallagher could have understood that. Indeed, the property spreadsheet offered by Majors's counsel at the outset of trial listed both items that the parties agreed belonged to the domestic partnership and items that one or both parties contended were separate property. Therefore, neither the property spreadsheets nor the record surrounding them reflects an agreement by Gallagher that the Mink Street property or G-Force were partnership property and subject to distribution.

And nothing of the parties' conduct or discussion confirmed that each agreed as to the character of the property at issue. We will hold parties to their stipulations "in the absence of fraud, duress, concealment of assets or other facts showing that the agreement was not made voluntarily *and with full understanding*."[12] But the record contains no evidence of understanding or agreement regarding characterization of the relevant property.

If anything, the parties' conduct demonstrates the opposite. In Gallagher's pleadings, he asserted the Mink Street property "was gifted to [him] in 2000 by his father" and that Majors surreptitiously obtained title to the property. In Majors's response she denied that she had surreptitiously obtained title and made clear that she understood the character of the Mink Street property was in dispute. And Gallagher's attempt to explain the purpose of a loan by Majors connected to G-Force was consistent with his understanding that the character of G-Force was also a live issue at the onset of the hearing.[13]

---

[12]     *Stevens v. Stevens*, 265 P.3d 279, 288 (Alaska 2011) (quoting *Notkin v. Notkin*, 921 P.2d 1109, 1111 (Alaska 1996)).

[13]     Unlike the question of the properties' character, the record supports the conclusion that the parties agreed to the valuation of the Mink Street property and G-Force. We reject Gallagher's argument that the court erred in its valuation of either

It is also clear that the court's characterization of both the Mink Street property and G-Force had substantial ramifications on the property distribution. If included in the partnership estate, the two property items represented approximately 87% of the value of the estate. If excluded, the estate would only be valued at approximately $51,000, resulting in a much smaller equalization payment to Majors. Thus, a stipulation regarding the character of those property items would greatly impact the parties.

To the extent the court relied on an agreement of the parties in determining the Mink Street home and G-Force to be partnership property, it was incumbent on the court to clarify the contours of the parties' stipulations. While the court repeatedly clarified that the parties agreed upon the valuation of the home and the business, and that Gallagher would receive those items, neither the court nor any party stated whether the parties agreed those items were part of the partnership estate. The court's final order assigning property items reflects its assumption that "there was no dispute concerning what was partnership property." The court did not ascertain whether the stipulations included agreement by Gallagher that the property items at issue were partnership assets. Therefore, it was error to rely on the parties' stipulation to infer that that the Mink Street property and G-Force were within the partnership estate.[14]

---

property. As the owner of G-Force, Gallagher was in the best position to provide an accurate valuation of the business. Prior to trial, Gallagher claimed that G-Force was worth $100,000. The spreadsheets the parties worked with all clearly indicated that Gallagher valued his 50 percent share of G-Force at $100,000. And neither the parties' pleadings, nor statements in court, indicated otherwise. The record is similar for the Mink Street property. Gallagher agreed to the value of the home throughout the proceedings, and nothing during the trial informed the court of the Mink Street property's value. Therefore we affirm the court's valuation of both the Mink Street property and Gallagher's share of G-Force.

[14] Even the court's final spreadsheet indicated that the parties disputed the character of G-Force.

**B.** **The Record Is Devoid Of Evidence Addressing The Character Of The Mink Street Property And The G-Force Business.**

Perhaps because the court assumed the parties had reached a stipulation regarding the proper characterization of the Mink Street property and G-Force, the record is devoid of evidence addressing that issue. While factual findings regarding a party's intent are reviewed for clear error, the court's determination whether certain property is part of the partnership estate is reviewed using our independent judgment.[15] Here there was no evidence that could support the court's decision to characterize the Mink Street property and G-Force as property of the domestic partnership. The court only received testimony regarding property items it understood were disputed. It heard no evidence related to the character of the properties at issue on appeal. Because the record does not support an agreement by the parties about the character of the Mink Street property or G-Force, and there is no evidence in the record addressing whether those items were property of the domestic partnership or separate property of one of the parties, it was error for the court to conclude that the property belonged to the partnership.

We therefore vacate the court's determination that the Mink Street property and G-Force were partnership assets, as well as its property distribution order, and we remand for further proceedings that allow the parties to present evidence regarding the proper characterization of the home and the business.[16] We make no

---

[15]     *Tomal v. Anderson*, 426 P.3d 915, 923 (Alaska 2008) (citing *Wood v. Collins*, 812 P.2d 951, 955 n.4, 957 (Alaska 1991)). Though statute can also determine whether an item of property is a partnership asset, neither party argues that on appeal.

[16]     We reject as insufficiently briefed Gallagher's one-sentence arguments that the court erred in only scheduling one trial day, and that the court's order constituted a taking under the Fifth Amendment of the United States Constitution. *See Casciola v. F.S. Air Servs., Inc.*, 120 P.3d 1059, 1063 (Alaska 2005) (requiring self-represented litigants to "cite authority and provide a legal theory" in their arguments (citing *Peterson v. Ek*, 93 P.3d 458, 464 n.9 (Alaska 2004))).

judgment as to whether the property is owned by Gallagher or Majors individually, or belongs to the partnership and is subject to division. We further note that the parties may still reach agreements regarding the involved issues, but should clearly state and affirm any such agreements on the record.

## V. CONCLUSION

We VACATE the superior court's decision that the Mink Street property and G-Force business are partnership property, and its resulting property division order and equalization payment, and REMAND for proceedings consistent with this decision.